UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRISTOPHER FITZGERALD, ) | |
| ) | |
| Plaintiff ) | |
| ) | CIVIL ACTION NO. |
| v. ) | |
| ) | No. 04-12138-NG |
| CBS BROADCASTING, INC., ) | |
| ) | |
| Defendant ) | |

**INTERROGATORIES PROPOUNDED BY PLAINTIFF**
<u>**TO BE ANSWERED UNDER OATH BY DEFENDANT**</u>
**(Second Series)**

In accordance with Rule 33 of the Federal Rules of Civil Procedure, Plaintiff hereby requests that Defendant answer separately and truthfully in writing under oath within thirty (30) days of service hereof each of the interrogatories set forth below in accordance with the following instructions and definitions:

**A. Instructions and Definitions**

Please refer to the Instructions and Definitions, which are contained in Plaintiff's Interrogatories to the Defendant (First Series) which are incorporated herein as if they had been restated in their entirety. In addition, wherever the word "defendant" is used herein, said term shall include CBS Broadcasting, Inc. and all of its predecessors and parent and subsidiary companies, including but not limited to Viacom, Inc. and all

television stations and television networks, such as the Columbia Broadcasting System that are owned or controlled by Viacom.

**B. Interrogatories to be answered:**

  1. With reference to the Mutual Settlement and Release ("Release"), a copy of which is attached hereto as Exhibit A, and the Action entitled, <u>Christopher Fitzgerald v. CBS Corporation</u>, that was filed in the US District Court for the District of Massachusetts, Docket No. 98CV11510-JLT (the "Prior Action"),

  a) please state and describe the uses of the Photographs that were the subject of the Prior Action that were disclosed by or on behalf of the Defendant and its predecessors in interest including but not limited to CBS Broadcasting, Inc., CBS Corporation, WBZ-TV Channel 4 Boston, and Viacom, Inc. to Plaintiff in the pleadings filed or the discovery conducted in the Prior Action.

  b) please state whether or not the Defendant or any of its predecessors in interest including but not limited to CBS Broadcasting, Inc., CBS Corporation, WBZ-TV Channel 4 Boston, and Viacom, Inc. disclosed to Plaintiff at any time on or prior to October 23, 1999, that WBZ-TV, Channel 4 Boston (now known as CBS 4 Boston) made a copy of the 60 Minutes program that was first broadcast on the CBS Television Network on May 10, 1998.

  2. Please state when, how and under what circumstances Plaintiff was first notified that WBZ-TV Channel 4 Boston made a copy of the 60 Minutes program that was first broadcast by the CBS Television Network on May 10, 1998, and identify who was notified.

3. Please identify all persons at WBZ-TV, Channel 4 Boston who were notified of the terms of the Release executed by and between Christopher Fitzgerald and CBS Corporation in the Prior Action, and state when, how and under what circumstances they were notified.

4a. Was WBZ-TV, Channel 4 Boston ever informed of any of the terms and conditions that were agreed upon by and between Christopher Fitzgerald and CBS Corporation for the use by CBS of the Flemmi Photographs on the 60 Minutes program originally broadcast by CBS on May 10, 1998?

b. If your answer to Interrogatory 4a. is in the affirmative, please identify who was informed, when, and under what circumstances, and state how they were informed and in as much detail as possible, what they were informed of.

5a. Was WBZ-TV Channel 4 Boston ever given a copy of the license that was given to CBS Corporation by Christopher Fitzgerald for the use of the Flemmi Photographs, a copy of which is attached as Exhibit B?

b. If your answer to Interrogatory 5a. is in the affirmative, please identify who was given a copy, when, and under what circumstances, and state how and by whom they were given a copy.

6a. Do you contend that WBZ-TV Channel 4 Boston had permission and/or authority for recording the 60 Minutes television show that was broadcast on the CBS Television Network on May 10, 1998?

b. If your answer to Interrogatory 6a. is in the affirmative, please state the nature of said permission or authority, stating whether it was oral or written, and identify

how it was granted, identify by whom it was granted and when, how and under what circumstances.

       7a.    Did WBZ-TV Channel 4 Boston, CBS 4 Boston, or UPN 38 ever receive notice from anyone including but not limited to Plaintiff, CBS or 60 Minutes about whether or not CBS 4 Boston or UPN 38 could use Plaintiff's Flemmi Photographs?

       b.    If your answer to Interrogatory 7a. is in the affirmative, please identify who gave you such notice, how, when, under what circumstances, identify to whom said notice was addressed, and summarize the contents of said notice in as much detail as possible.

       8a.    Did WBZ-TV Channel 4 Boston, CBS 4 Boston, or UPN 38 ever receive notice from anyone including but not limited to Plaintiff, CBS or 60 Minutes about any restrictions on the use of Plaintiff's Flemmi Photographs that were broadcast on the 60 Minutes television program on May 10, 1998?

       b.    If your answer to Interrogatory 8a. is in the affirmative, please identify who gave you such notice, how, when, under what circumstances, identify to whom said notice was addressed, and summary said notice in as much detail as possible.

       9.    From 1998 to 2005, have you ever received notice regarding the restricted use of any photographs, film or video footage or other images on WBZ-TV Channel 4 Boston, CBS 4 Boston or UPN 38, and if so, please describe under what circumstances you received such notice, when and how, and identify from whom it was received and identify to whom it was addressed, and describe the extent of such restricted use.

10. From 1998 to 2004, please identify who participated in making decisions regarding the creation of so-called "pitch reels" and please state how these decisions were made during various time periods when any such procedures changed or were modified.

11. From 1998 to 2004, please describe all circumstances in which you have been given notice of, or have been informed of any restricted terms of use or limitations on using copyrighted materials such as photographs and film and video footage, including how such notice was given and what actions were taken to notify CBS 4 Boston and UPN 38 personnel, such as email messages, discussions of use, and orders to purge material from records, documents or archives.

12. Please describe all practices and procedures in effect at WBZ-TV Channel 4 Boston, CBS 4 Boston, and UPN 38 from 1998 to 2005, that were designed to prevent the unauthorized use of copyrighted or otherwise restricted materials on local television broadcasts.

                                                Christopher Fitzgerald,
                                                By his Attorney,

                                                /s/ Andrew D. Epstein
                                                _____

July 27, 2006                          Andrew D. Epstein, Esquire
                                                BBO #155-140
                                                Barker, Epstein & Loscocco
                                                10 Winthrop Square
                                                Boston, MA  02110
                                                (617) 482-4900
                                                FAX: (617) 426-5251
                                                Photolaw@AOL.com

Exhibits Attached:

Exhibit A – Mutual Settlement and Release – <u>Fitzgerald v. CBS</u>, 98cv11510-JLT
Exhibit B – License from Fitzgerald to CBS (60 Minutes Show) dated March 16, 1998

OCT 20 '99 12:22 FR BINGHAM DANA LLP 18A 617 951 8736 TO 94265251   P.03

## MUTUAL SETTLEMENT AND RELEASE

Effective as of October 23 1999, Christopher Fitzgerald ("Plaintiff") and CBS Corporation ("Defendant") enter into this SETTLEMENT AND RELEASE (hereafter the "Agreement").

WHEREAS, Plaintiff brought certain causes of action against Defendant which are the subject of Civil Action No. 98CV11510-JLT in the United States District Court for the District of Massachusetts (the "Lawsuit"); and

WHEREAS, Defendant denies all of Plaintiff's allegations in the Lawsuit; and

WHEREAS, bona fide disputes and controversies exist between Plaintiff and Defendant and, by reason of such disputes and controversies, Plaintiff and Defendant desire to compromise and settle all claims, demands, and causes of action between them, arising in contract, in tort, by statute, at law or in equity, fixed or contingent, whether known or unknown, actual or potential, that were asserted or could have been asserted by Plaintiff against Defendant or by Defendant against Plaintiff, arising out of the facts, transactions, occurrences, actions, or events which gave rise to the Lawsuit.




0071

LITDOCS:320218.1

Received Time Oct.20. 12:22PM

OCT 20 '99 12:23 FR BINGHAM DANA LLP 18A 617 951 8736 TO 94265251  P.04

-2-

## TERMS

THEREFORE, in consideration of the mutual promises, covenants, and warranties contained herein, the receipt and sufficiency of which is acknowledged, the parties hereto agree as follows:

1. Plaintiff agrees to deliver to Defendant a fully executed Joint Stipulation of Dismissal with Prejudice, in the form attached hereto as Exhibit A, contemporaneously with the final execution and delivery of this Agreement to Defendant, such executed Stipulation to be promptly filed with the court.

2. Defendant agrees to pay the total sum of $15,000 by check(s) made payable to "Andrew D. Epstein, as attorney for Christopher Fitzgerald" contemporaneously with the final execution and delivery of this Agreement by Plaintiff to Defendant.

## RELEASES

3. Plaintiff hereby discharges, releases, and acquits Defendant, its affiliates, subsidiaries, parent corporations, successors-in-interest, predecessors-in-interest, agents, servants, employees, partners, officers, directors and representatives, of and from all claims, demands, or causes of action of any kind (including costs, expenses, and legal fees which may be or have been incurred in connection with such claims), at law or in equity, fixed or contingent, known or unknown, actual or potential, which have been or could have been asserted in the Lawsuit, including any claims, demands, or

OCT 20 '99 12:23 FR BINGHAM DANA LLP 18A 617 951 8736 TO 94265251        P.05

-3-

causes of action relating to any publication, broadcast, re-broadcast or other use of the photographs that were the subject of the Lawsuit (the "Photographs").

4. Defendant hereby discharges, releases, and acquits Plaintiff, his heirs, successors or assigns, from all claims, demands, or causes of action of any kind (including costs, expenses, and legal fees which may be or have been incurred in connection with such claims), at law or in equity, fixed or contingent, known or unknown, actual or potential, which have been or could have been asserted in the Lawsuit.

## WARRANTIES AND REPRESENTATIONS

5. Each signatory hereto represents and warrants that he or it is unaware of any uses by the Defendant of the photographs at issue in the Lawsuit other than those that have been disclosed in the pleadings filed and discovery conducted in the Lawsuit.

6. Each signatory hereto represents and warrants that he or it is authorized to execute this Agreement on behalf of the party for whom he or it purports to execute this Agreement.

7. Each party warrants and represents that he or it is legally competent to execute this Agreement and that he or it is the owner of the claims, liabilities, and causes of action released herein and that he or it has not assigned, transferred, conveyed, or in any way encumbered any claim, liability or cause of action released herein. Each party warrants and

LITDOCS:320219.1

0073

Received Time Oct.20. 12:22PM

OCT 20 '99 12:23 FR BINGHAM DANA LLP 18A 617 951 8736 TO 94265251         P.06

-4-

represents that he or it is fully authorized to execute this Agreement without the necessity of obtaining the consent of any other party and that no other person or entity needs to be joined in this Agreement in order to accomplish the agreements and releases set forth herein. Plaintiff warrants and represents that it has not assigned or otherwise disposed of any claims or causes of action made the basis of the Lawsuit and which are settled and released by this Agreement.

8.  Each party warrants and represents that the execution and performance of this Agreement will not result in a breach of or constitute a default under any charter or bylaw of any provision which is binding on he or it or any other agreement, contract, or undertaking to which he or it is a party.

9.  Each party warrants and represents that he or it has read this Agreement, understands this Agreement, and freely and voluntarily entered into this Agreement after receiving the advice of counsel.

## INDEMNIFICATION

10. Plaintiff hereby indemnifies, defends, and holds harmless Defendant from any and all claims, demands, actions, or causes of action of whatsoever nature or character, including all costs, expenses, and legal fees in defending same, which have been or which may hereafter be asserted by any person or entity whomsoever claiming by or through Plaintiff, arising out of the transaction or occurrence that formed the basis for the Lawsuit.

0074

LITDOCS:&20219.1

Received Time Oct.20. 12:22PM

OCT 20 '99 12:24 FR BINGHAM DANA LLP 18A 617 951 8736 TO 94265251    P.07

-5-

## CONFIDENTIALITY

11.   Each party shall maintain the strict confidentiality of all matters relating to this Agreement, and shall not disclose any such matters to any third party except as may be required by governmental regulation, authority, or court order. This confidentiality provision shall extend to all members of the Plaintiff's immediate family and counsel for each party. The parties shall be entitled to reveal only that the Lawsuit has been concluded on terms mutually acceptable to all of the parties without any reference to the existence or amount of compensation paid hereunder. Notwithstanding anything to the contrary in this paragraph, this Agreement shall not prohibit the disclosure of any amounts paid or to be paid by any party as a result of this Agreement to its accountants, bookkeepers, attorneys, or tax consultants nor shall it prohibit any party from taking any legal action necessary to enforce this Agreement or exercise any rights thereunder. In the event of future litigation between Plaintiff and Defendant concerning the Photographs, nothing herein shall prevent Plaintiff from attempting to offer this Agreement in evidence, subject to Defendant's right to object to the admissibility of such evidence, which Defendant hereby reserves the right to do.

## MERGER

12.   This instrument contains the entire agreement between the parties hereto relating to the subject matter hereof and there are no

LITDOCS:320219.1    0075

Received Time Oct.20. 12:22PM

OCT 20 '99 12:24 FR BINGHAM DANA LLP 18A 617 951 8736 TO 94265251    P.08

-6-

inducements, representations, warranties, or understandings that do not appear within the terms and provisions of this Agreement. This Agreement supersedes any and all prior oral and/or written agreements between the parties regarding the Lawsuit.

13. Each party understands that this is a full, final, and complete settlement and release and that the consideration described herein is all of the consideration to be given by each party hereto.

## MISCELLANEOUS

14. It is expressly agreed that this payment shall not be deemed a license fee, nor any admission, statement against interest or concession by the Defendant with respect to the claims and defenses asserted in the Lawsuit. The parties agree that this Agreement is made to avoid the expense of litigation, without any admission of liability or concessions by either party as to the claims and defenses asserted in the Lawsuit.

15. Any reference to the "party," the "parties" or any individual party shall mean and refer to the party or parties so named in the Lawsuit and each of their affiliates, subsidiaries, parent corporations, successors-in-interest, predecessors-in-interest, agents, servants, employees, partners, officers, directors, and representatives, whether specifically named herein or not, and any other person in privity with any of them.

16. This Agreement may not be orally modified, amended, or terminated, and no term hereof may be waived. No modification,

LITDOCS:320219.1

0076

Received Time Oct.20. 12:22PM

OCT 20 '99 12:25 FR BINGHAM DANA LLP 18A 617 951 8736 TO 94265251  P.09

-7-

amendment, termination or claimed waiver of any of the provisions of this Agreement shall be binding unless made in writing and signed by the party against whom such modification, amendment, or waiver is sought to be enforced.

17. It is expressly understood and agreed that the terms hereof are contractual and not mere recitals, and that the agreements contained herein and the consideration transferred are intended to compromise doubtful and disputed claims, avoid litigation, and buy peace, and that no payments made or other consideration given shall be construed as an admission of liability by any party, all liability being expressly denied.

18. It is further understood and agreed that this Agreement has been prepared by the joint efforts of the respective attorneys for each of the parties.

19. This Agreement may be executed in one or more counterparts, each of which when so executed and delivered shall be deemed to be an original, but all of which taken together shall constitute but one and the same instrument. A facsimile signature of this Agreement shall be effective in all respects.

20. Each of the parties to the Lawsuit shall bear its own costs of court, attorney's fees, and all other costs of litigation.

OCT 20 '99 12:25 FR BINGHAM DANA LLP 18A 617 951 8736 TO 94265251    P.10

-8-

21. All headings used in this Agreement are used for convenience only and shall not be used to construe the meaning of any provision of this Agreement.

## GOVERNING LAW

22. This Agreement shall be governed by the laws of the Commonwealth of Massachusetts and shall take effect as an instrument under seal. In the event any one or more of the provisions contained herein should be invalid, illegal, or unenforceable in any respect, the validity, legality, and enforceability of the remaining provisions contained herein shall not in any way be effected thereby and each remaining term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law.

AGREED AND ACCEPTED:

*/s/ Christopher Fitzgerald/*
Christopher Fitzgerald

CBS CORPORATION

By: */s/*

0079

LITDOCS:320219.1

Received Time Oct.20. 12:22PM

Christopher Fitzgerald, Photographer

6 High Street #4 • North Grafton, MA 01536 • USA
Telephone & Fax (508) 839-5920
Digital Pager (508) 391-8817

**EXHIBIT B**

One of two faxed Pages to Heady Gold

# Stock Photography Contract
# (March 16, 1998)

Christopher Fitzgerald, photographer, and ~~Heady~~ Hetty Gold, director of business affairs for CBS News, agree to the following terms regarding the broadcast on *Sixty Minutes* of two still photographs depicting suspect Stephen Flemmi being led away by Massachusetts state troopers:

1. For the sum of $800.00, Christopher Fitzgerald has granted *Sixty Minutes* the non exclusive right to broadcast one single screen exposure of both photos on one segment of the program.

2. For the sum of $280.00, Christopher Fitzgerald has granted *Sixty Minutes* the non exclusive right to re-broadcast a single screen exposure of both photos on one follow up broadcast of the same or a related segment.

3. For the sum of $170.00, Christopher Fitzgerald has granted *Sixty Minutes* the non exclusive right to include the photos in foreign broadcasts of the segments which first appeared on television in the United States.

4. For the sum of $25.00, Christopher Fitzgerald has granted *Sixty Minutes* the non exclusive right to include the photos in airline flight presentations of the segments which first appeared on television in the USA.

5. For the sum of $25.00, Christopher Fitzgerald has granted *Sixty Minutes* the non exclusive right to include the photographs in video sales of the two segments in which the photos were aired.

6. This contract does not grant CBS or its affiliates the permission to re-publish these photos on other televised programs or in other media. Additional uses and re-broadcasts of the photographs, beyond the terms of this agreement (which totals $1,300.00), would require further negotiation.

_____ Christopher Fitzgerald

_____ Hetty ~~Heady~~ Gold