UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CHRISTOPHER FITZGERALD, ) | |
| ) | |
| Plaintiff ) | |
| ) | CIVIL ACTION NO. |
| v. ) | |
| ) | 04-CV-12138-NG |
| CBS BROADCASTING INC., ) | |
| ) | |
| Defendant ) | |

### DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO PROPOUND MORE THAN TWENTY-FIVE INTERROGATORIES AND TO SERVE A THIRD SET OF REQUESTS FOR DOCUMENTS AND IN SUPPORT OF DEFENDANT'S MOTION FOR PROTECTIVE ORDER

By all rights, this should be a factually straightforward case. On June 24, 2004, the defendant CBS Broadcasting Inc. ("CBS") aired news reports concerning the sentencing of John Martorano and Martorano's agreement to cooperate with federal law enforcement authorities. The news reports were allegedly aired on the defendant's locally owned stations CBS-4 and WSBK (channel 38) and included a photograph of Stephen Flemmi taken by the plaintiff, Christopher Fitzgerald. The plaintiff claims that the use of the Flemmi photograph was a copyright violation. The defendant claims, among other things, that the news reports were a fair use of the photograph and are protected by the First Amendment.

In 1999, the parties settled a similar claim brought by the plaintiff involving an earlier use of the same Flemmi photograph, without any admissions of liability. Since

1

discovery in this case has revealed that the most the plaintiff ever has received for licensing the Flemmi photograph is $800, he has struggled mightily to find a way to artificially complicate and inflate his damages claim and turn this case into a windfall payday.[1]

The plaintiff's latest attempt to embellish his claims-- reflected in the belated discovery requests at issue in this motion -- is the preposterous assertion that he is entitled to recover against CBS for making an archive copy of a May 1998 Sixty Minutes broadcast that included a licensed use of the Flemmi photograph. He conveniently ignores that (a) he accepted $15,000 in 1999 in consideration for releasing the defendant of any and all such claims; (b) his claims in this case already include the only known times the Flemmi photograph was aired since the 1999 settlement; and (c) it was no more a copyright violation for the defendant to have made an archive copy of a 60 Minutes broadcast than it would be to maintain a clipping file of newspaper articles concerning the Whitey Bulger/Stephen Flemmi saga.

In pursuit of this meritless claim, the plaintiff has sought leave from the court to take discovery beyond that permitted as of right and to do so after the already extended

---

[1] For example, the plaintiff has asserted that he is entitled to *two* awards of statutory damages because the Flemmi photograph was aired on two stations commonly owned by the same defendant -- CBS-4 (channel 4) and WSBK (channel 38). Compare Venegas-Hernandez v. Sonolux Records, 370 F.3d 183, 194 (1st Cir. 2004) (the amount "that a plaintiff may recover in any given action against a single defendant depends on the number of *works* that are infringed and the number of individually liable *infringers* and is unaffected by the number of *infringements* of those works"). Although the parties had agreed to present this issue to the court as part of their upcoming summary judgment motions, (see March 8, 2006, Report Re Reference for Alternative Dispute Resolution to Judge), on July 28, 2006, the plaintiff filed a new action (not yet served on the defendant) asserting a right to separately recover for the WSBK broadcasts that presumably still are at issue in this case. See Christopher Fitzgerald v. CBS Broadcasting, Inc., D. Mass. No. 06-11302-NG.

period for discovery has expired. When his motion for leave is added to the two additional deposition notices recently served by plaintiff on the defendant, _and_ the duplicative case filed but not yet served, it becomes apparent that the plaintiff's tactics have nothing to do with preparing this case for summary judgment and, if necessary, trial. Accordingly, the defendant's motion for a protective order should be allowed and the plaintiff's motion for leave denied.

## I. Relevant Background

As detailed more fully below, the bulk of discovery requested by plaintiff in his motion for leave relates to a law suit he settled with the defendant nearly seven years ago. In 1998 plaintiff filed a complaint against defendant (then CBS Corporation) related to a photograph of Stephen ("the Rifleman") Flemmi, on which plaintiff asserted a copyright. The action was entitled <u>Fitzgerald</u> v. <u>CBS Corporation</u>, Civil Action No. 98-cv-11510-JLT, and was filed in the United Stated District Court for the District of Massachusetts. As amended, the complaint asserted copyright infringement related to airing of the Flemmi photograph on local Boston CBS newscasts and the national "60 Minutes" news program.

The 60 Minutes use at issue in the 1998 litigation was pursuant to a licensing agreement between CBS and the plaintiff. The licensing agreement provided, among other things, that for the payment of $25, "60 Minutes" was granted the continuing right to include the Flemmi photograph "in video sales of the two segments in which the photos were aired." <u>See</u> Stock Photography Contract at ¶5.

On October 23, 1999, the parties settled the 1998 case, with neither admitting liability and expressly agreeing

> that this payment shall not be deemed an license fee, nor any admission, statement against interest or concession by the Defendant with respect to

> the claims and defenses asserted in the Lawsuit. The parties agree that this Agreement is made to avoid the expense of litigation, without any admission of liability of concessions by either party as to the claims and defenses asserted in the Lawsuit.

See Mutual Settlement and Release at ¶14 attached as Exhibit A to Plaintiff's Proposed Interrogatories.[2] In addition the Mutual Settlement and Release contained broad release language whereby plaintiff

> discharges, releases, and acquits Defendant, its affiliates, subsidiaries, parent corporations, successors-in-interest, predecessors-in-interest, agents, servants, employees, partners, officers, directors and representatives, of and from all claims, demands, or causes of action of any kind ... at law or in equity, fixed or contingent, known or unknown, actual or potential, which have been or could have been asserted in the Lawsuit, including any claims, demands, or causes of action relating to any publication, broadcast, re-broadcast or other use of the photographs that were the subject of the Lawsuit."

See Mutual Settlement and Release at ¶8 attached as Exhibit A to Plaintiff's Proposed Interrogatories.

During plaintiff's 30(b)(6) deposition of defendant, the deponent testified that the local station, CBS-4 makes its own archive copy of "60 Minutes" episodes, which would include the May 10, 1998 episode. These archive copies are made at the time the show is aired and are kept for approximately six months, after which the tapes are recycled. See July 19, 2006 Deposition of Jennifer Street at 39:7-39:22, attached hereto in relevant part as *Exhibit A*. Accordingly, the tape of the May 10, 1998 "60 Minutes" episode was created prior to the 1999 Mutual Settlement and Release.

---

[2] It bears noting that plaintiff has, thus far, refused to provide in discovery to defendant copies of prior settlement statements in actions related to the Flemmi photograph citing a confidentiality provision in those settlement agreements as a basis for withholding them. The Mutual Settlement and Release executed by plaintiff and defendant related to the 1998 lawsuit also contains a confidentiality provision, but was nonetheless attached by plaintiff as an exhibit to his motion for leave. Plaintiff did not inform defendant prior to publicly filing the Mutual Settlement and Release of his intent to do so.

A.  **The Discovery Requests at Issue**

The additional discovery that the plaintiff seeks almost exclusively relates to potential (at best) claims that the plaintiff released in his 1999 settlement agreement with the defendant. The plaintiff's third set of document requests asks for "all documents upon which you rely which gave WBZ-TV Channel 4 Boston any permission or authority to record the 60 Minutes program that was first broadcast by the CBS Television Network on May 10, 1998." (See Exhibit C to Plaintiff's Motion for Leave). As noted, the archived copy of the 60 Minutes broadcast was made when it aired in 1998, and therefore *before* the 1999 settlement. See July 19, 2006 deposition of Jennifer Street at 39:7 - 39:22.

The additional interrogatories the plaintiff seeks to serve also are focused on alleged conduct that occurred before the 1999 settlement. Interrogatories 1(a) and (b) ask for a list of uses of the Flemmi photograph disclosed to the plaintiff before the 1999 settlement. Interrogatory 2 asks when the plaintiff first became aware that an archived copy of the 60 Minutes broadcast had been made back in 1998. Interrogatory 3 asks for the identity of employees who were informed of the 1999 release executed by the plaintiff; interrogatories 4(a) and 4(b) seek information about the terms of the 1999 agreement as it related to making copies of the 1998 60 Minutes broadcast; interrogatories 5(a), 5(b), 6(a), 6(b), 7(a), 7(b), 8(a) and 8(b) ask, in sometimes argumentative fashion, whether the defendant had a right to make an archive copy of the 1998 60 Minutes broadcast. Interrogatories 9-12 ask for information concerning unrelated cases or claims that, even if relevant, could have been asked at any time since this case was filed.

Plaintiff has also served two additional deposition notices for employees of the defendant, which based upon the discovery taken to date can relate only to the irrelevant taping of the "60 Minutes" broadcast or to topics already covered in the extensive 30(b)(6) deposition taken by plaintiff of defendant.

5

## II. Argument

### A. The Requested Discovery is Irrelevant and Relates to a Settled Lawsuit.

The plaintiff has had full and fair discovery in this action. He has taken a full-day 30(b)(6) deposition of defendant, related to no less than nineteen listed topics. He has served and received responses to 25 interrogatories, and has served and received responses to two sets of document requests.[3]

As a review of the additional discovery sought by the plaintiff readily demonstrates, his current interest is not in preparing this case for summary judgment or, if necessary, trial. Rather, his intent is to resurrect claims that he not only released in 1999 but which are, on their face, entirely specious.

Reduced to essentials, the plaintiff wishes to take unnecessary discovery in pursuit of a claim that the defendant acted unlawfully when it made an archive tape of the "60 Minutes" program from May of 1998. It is one thing for a photographer to claim that a television station is not free to broadcast his photographs -- no matter how newsworthy -- without paying him a fee. It is quite another thing for him to claim that the television station is prohibited by law from making archive copies of national news broadcasts because those broadcasts happen to contain news photographs he has taken. See generally Sony Corp. of America v. Universal City Studios, 464 U.S. 417, 449 (1985) (taping of television programs for later viewing fair use under copyright law). There is no authority for such an extraordinary proposition.

---

[3] In addition, the plaintiff presumably believes he is entitled to take additional discovery in his recently filed duplicative action against CBS (a position that CBS will timely oppose in that case).

6

Moreover, the plaintiff's theory cannot survive a reading of his own contract with concerning the "60 Minutes" program. In exchange for the payment of $25 to the plaintiff (a telling piece of evidence with respect to his damages claims), the plaintiff granted the right to include his photographs "in video sales of the two [60 Minutes] segments in which the photos were aired." See Stock Photography Contract at ¶5. Just as the defendant was allowed to sell videos of the 60 Minutes broadcast, it was allowed to archive a video copy of the program. Under these circumstances, discovery should not be permitted to pursue irrelevant, meritless claims, particularly at this late date.

### III. Conclusion

The defendant respectfully requests that the Court deny the plaintiff's Motion for Leave to Propound More than Twenty-Five Interrogatories and to Serve a Third Set of Request for Documents and grant the defendant's motion for a protective order.

Respectfully submitted,

CBS BROADCASTING INC.,

By its attorneys,

/s/ Mary B. Murrane
Jonathan M. Albano, BBO#013850
Mary B. Murrane, BBO# 644448
**BINGHAM MCCUTCHEN LLP**
150 Federal Street
Boston, MA 02110
(617) 951-8000

Dated: August 14, 2006

LITDOCS/650108.1

**Exhibit A**

```
                                                                    1
 1                              Volume:    I

 2                              Pages :    1 - 155

 3                              Exhibits: 1 - 28

 4


 5              UNITED STATES DISTRICT COURT

 6           FOR THE DISTRICT OF MASSACHUSETTS

 7              CIVIL ACTION NO. 04-CV-12138-NG

 8   - - - - - - - - - - - - - - - - - - - - -

 9   CHRISTOPHER FITZGERALD,

10                  Plaintiff,

11     V.

12   CBS BROADCASTING, INC.,

13                  Defendant.

14   - - - - - - - - - - - - - - - - - - - - -

15


16       30(b)6 DEPOSITION OF CBS BROADCASTING, INC.

17              Through JENNIFER STREET

18         Wednesday, July 19, 2006, 10:10 a.m.

19              Barker, Epstein & Loscocco

20                  10 Winthrop Square

21                  Boston, Massachusetts

22         Reporter:  Rosemary F. Grogan, CSR, RPR

23         LegaLink Boston, a Merrill Company

24                   (617)542-0039
```

                                                             39
1   preparation -- well, in preparation for this deposition,
2   but a year ago when I began meeting with Mary.
3        Q.   And who did you talk to about that?
4        A.   I actually spoke to the former news director,
5   Peter Brown, who had fairly intimate knowledge about the
6   lawsuit.
7        Q.   You testified this morning, and you also
8   stated in your answer to the interrogatory, that CBS 4
9   routinely records a copy of all 60 Minutes' broadcasts.
10            And they do that even if there are no
11  stories of local or regional news; is that correct?
12       A.   That's correct.
13       Q.   And to the best of your knowledge, the library
14  at 1170 Soldiers Field Road has copies of all 60
15  Minutes' broadcasts in-house?
16       A.   Of all?
17       Q.   Yes.
18       A.   They get held on to for several months and
19  then the tapes get recycled.
20       Q.   How many months do you keep them?
21       A.   I don't know the exact time period; say
22  approximately six.
23       Q.   If you ever needed a copy of a 60 Minutes
24  broadcast from, say, 10 years ago, could you get a copy?