UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

_____

)
CHRISTOPHER FITZGERALD,          )
                                    )
                      Plaintiff    )
                                    )     CIVIL ACTION NO.
v.                                )
                                    )     No. 04-12138-NG
CBS BROADCASTING, INC.,      )
                                    )
                    Defendant   )
_____)

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR A PROTECTIVE ORDER**

       This Memorandum is submitted in opposition to Defendant's Motion for a

Protective Order attempting to quash the depositions of Eric Cox and Tom Janssen,

employees of Defendant.  These depositions are necessary for Plaintiff to prove that

Defendant infringed Plaintiff's copyrighted photograph of notorious mafia hit man,

Stephen ("The Rifleman") Flemmi and to help establish the level of culpability, between

that of innocent infringement and willful infringement, that will aid the jury in

determining the appropriate level of Statutory Damages to be award to Plaintiff,

Christopher Fitzgerald ("Fitzgerald") under Section 504(c) of the Copyright Act (Title

17).  Plaintiff noticed both witnesses well within the time parameters of this court's

discovery deadlines.  The anticipated discovery will also be highly relevant and probative

with respect to the reason why Defendant retained a copy of Plaintiff's photograph in its

film library especially since the Defendant was sued in this court in 1998 for infringement of virtually the same photograph.[1]

## I.    FACTS

### A.    Fitzgerald is a Professional Freelance Photographer.

Christopher Fitzgerald is and has been a professional freelance photographer for many years.  [Fitzgerald Affidavit ¶ 1; ("Fitz. ¶ 1").]  On January 6, 1995, Fitzgerald acting on a tip from the *Boston Globe* photographed Flemmi, who was being taken from the Framingham State Police barracks to an undisclosed location. Fitzgerald was able to take two photographs of Flemmi, one of him looking ahead to the right and one of him looking back to the left.  Fitzgerald was the only photographer in Framingham at the time of Flemmi's transfer.  [Fitz. ¶ 2.]  On the following day, one of Fitzgerald's two photographs of Flemmi was published on the front page of the *Globe*.  [Fitz. ¶ 3.]

### B.    Fitzgerald owns the Copyrights to Both Flemmi Photographs.

Fitzgerald owns the copyrights to both photographs (the "Flemmi Photographs") both of which were registered with the Copyright Office on February 10, 1998.  The Flemmi photographs have been given Copyright Registration Numbers VA900-332 and VAu411-320.  [Fitz. ¶ 4, and Exhibits A & B.]  To the best of Fitzgerald's knowledge and belief, the Flemmi Photographs are the best relatively recent images of Flemmi that are available for publication.  Flemmi's official arrest photographs have apparently never been released by the authorities.  [Fitz. ¶ 5.]

---

[1] See, Fitzgerald v. CBS Corporation, U.S. District Court, Massachusetts; Docket No. 98-cv-11510-JLT.

The Flemmi Photographs have been used and published on numerous occasions both with Fitzgerald's permission and without his permission.  Fitzgerald has aggressively pursued all claims for the unauthorized uses of the Flemmi Photographs.  [Fitz. ¶ 6.]  To date, Fitzgerald has earned $4,350 in licensing fees for <u>authorized</u> uses of the Flemmi Photographs, and $58,600 in settlements for <u>unauthorized</u> uses of the Flemmi Photographs, including a payment of $15,000 from CBS in 1999.  [Fitz. ¶ 6 and the Exhibit attached to the Affidavit.]

   **C.**  **Fitzgerald sued WBZ-TV and CBS for Copyright Infringement for the Unauthorized use of the same Flemmi Photographs.**

In 1998, WBZ-TV, a CBS affiliate, used one of the Flemmi Photographs without Fitzgerald's permission.  [Fitz. ¶ 7.]  In 1998, Fitzgerald made a claim against WBZ-TV and later filed a lawsuit in this Court alleging that WBZ-TV copied one of the Flemmi Photographs from the *Boston Globe* and broadcast it on Channel 4 on numerous occasions without permission.  [Fitz. ¶ 7; <u>see</u>, also, <u>Fitzgerald v. CBS Corporation</u>, US District Court, District of Massachusetts, Docket Number 98-11510-JLT (the "1998 Action").]

In March 1998, while Fitzgerald's lawsuit against WBZ-TV was pending, the CBS television network in New York, contacted Fitzgerald to see if CBS could get rights to use the Flemmi Photographs on *60 Minutes*, a nationally broadcast CBS television program.  [Fitz. ¶ 8.]  Fitzgerald licensed CBS to use both of his Flemmi Photographs on *60 Minutes* each for "one single screen exposure."  The licensing agreement specifically says:

> 6.  This contract does not grant CBS or its affiliates the permission to republish these photos on other television programs or in other media.  Additional uses and re-broadcasts . . . would require further negotiation.

See Stock Photography Contract attached hereto as Exhibit C and the Invoice attached

as Exhibit D.  [Fitz. ¶ 8.]

In a letter to the producer of *60 Minutes* on March 18, 1998, Fitzgerald says,

As a reminder, I would be grateful if you could include a copyright notice in the
show credits.  I am leery of other news organizations gleaning the photos
without permission, especially since these are the only topical photos – still or
video—that exist of Mr. Flemmi (at least to the best of my knowledge).

See Exhibit E.  [Fitz. ¶ 8.]  CBS agreed to the limited usage of the Flemmi Photographs.

When CBS broadcast the 60 Minutes program with the story about Flemmi,

Fitzgerald discovered that CBS used one of his Flemmi Photographs for a total of five

single screen exposures, four exposures more than CBS was licensed to use the image.

[Fitz. ¶ 9.]  Fitzgerald amended his Complaint in the 1998 Action and alleged the

further infringement of the Flemmi Photographs by CBS on *60 Minutes*.  In November

1999, Fitzgerald and CBS settled this lawsuit for $15,000.   [See, Mutual Settlement and

Release attached as Exhibit F and Fitz. ¶ 9.]

> **D.    In 2004, WBZ-TV used one of the Flemmi Photographs again
>          without Fitzgerald's permission.**

In June 2004, WBZ-TV (now called "CBS 4 Boston" but referred to herein as

"WBZ-TV") used one of the Flemmi Photographs on various news broadcasts as well as

on the WBZ-TV website.  The present Action, the "2004 Lawsuit" followed shortly

thereafter.[2]

CBS admits that it used one of the Flemmi Photographs on various news

broadcasts on June 24 and June 25, 2004, as well as on certain other occasions, and it

---

[2] The same Flemmi Photograph was also broadcast without Fitzgerald's permission by UPN 38 (WSBK-TV,
Channel 38 Boston).  This unauthorized use is the subject of a separate action against CBS that is pending in
this court.  See, Fitzgerald v. CBS Broadcasting, Inc., Case Number 06-11302-NG.

admits that the Photograph was posted on WBZ-TV's website.  [Defendant's Answer to

Complaint and Defendant's Answer to Interrogatory # 5, Exhibit G.]   CBS denies that it

ever infringed Fitzgerald's copyrights, that its use of the Flemmi Photograph was a fair

use under 17 U.S.C. §107, that its use was a lawful use under 17 U.S.C. §113(c), that

CBS's use of the image was permitted under the First Amendment to the United States

Constitution, and that Fitzgerald has waived any claims he had by permitting

widespread use of the Flemmi Photographs.  [Defendant's Answer, Affirmative

Defenses 1 through 6, Exhibit H.]

        In addition, CBS claims that its use of the Flemmi Photograph was an innocent

mistake.  CBS claims that it made a "routine" copy of the *60 Minutes* program that was

broadcast in 1998, and while the copy was still at WBZ-TV and before the Flemmi

Photographs were purged from the tape archives as a result of the 1998 Lawsuit, some

unidentified individual in the newsroom in Boston made a so-called "pitch reel" from

the *60 Minutes* tape.  [CBS Ints. # 3, Exhibit G.]  According to CBS, a "pitch reel" is a

tape organized by subject matter and used to facilitate the editing process of news

reports on that subject matter.  [CBS Ints. # 3.]   The pitch reel that was placed in the

video library of WBZ-TV was indexed as "New England 60 Minutes," under the

category of "Crime" and with the descriptor "Bulger/Flemmi."  [CBS Ints. # 3.]   The

pitch reel was available to all WBZ-TV employees [CBS Ints. #3.], and it was used by

WBZ-TV in a story about John Martorano, a person who had Mafia connections

somewhat related to Flemmi.  [CBS Ints. # 5.]

Fitzgerald owns a *rare* and valuable asset in the Flemmi Photographs and he has carefully monitored and controlled both photographs in order to prevent unauthorized uses and to preserve the continuing value of the Flemmi Photographs. [Fitz. Aff. ¶ 10.]

      **E.**      **The unauthorized and undisclosed copy of the *60 Minutes* broadcast in 1998 was the source of the Flemmi Photograph that was used by WBZ-TV in the June 2004 newscasts.**

Plaintiff's additional interrogatories and requests for documents, as well as his two deposition notices are designed to seek information that is both relevant to the issues in the present case, and that is necessary for Plaintiff to be able to prove that CBS was a willful infringer under the Copyright Act. Defendant's opposition is groundless as it fails to acknowledge one important fact: that CBS failed to disclose, as it was obligated to do, that it made two video copies of Plaintiff's photograph in or around 1998, and archived them in Defendant's library. CBS made an off-air copy of the May 1998 broadcast of the *60 Minutes* story, and it subsequently made a so-called "pitch reel" created from that copy. WBZ-TV kept both of these copies in the station's film library under the direct control of Eric Cox and his boss, Tom Janssen. The existence of these tapes, which Jennifer Street speculated were made shortly after the May 1998 broadcast of *60 Minutes* [Deposition of Jennifer Street, news director of WBZ-TV, p. 44, lines 19-21 ("Street Dep. P. 44, l. 19-21")], were not disclosed to Fitzgerald as part of the settlement of the 1998 Action as they should have been. In this Release, CBS warranted that it was not aware "of any uses by the Defendant of the photographs at issue in the Lawsuit [the 1998 Action] other than those that have been disclosed in the pleadings filed and discovery conducted in the Lawsuit." [Exhibit F, ¶ 5.] The undisclosed tapes of the *60 Minutes*

broadcast containing copies of the Flemmi Photographs made by WBZ-TV in 1998, was

the source of the photograph that led directly to the infringement claimed in this Action.

      **F.**    **The depositions, additional interrogatories and additional document requests are necessary to help Plaintiff establish the degree of culpability of WBZ-TV in using one of Plaintiff's Flemmi Photographs again.**

When Jennifer Street of CBS was asked when the pitch reel was created, she

answered in her June 19, 2006 deposition: "I could only speculate it was very shortly

after broadcast because the tape was purged shortly after that." [Street Dep. p. 44, lines

19-21]. Eric Cox has been the custodian of the film archive at WBZ-TV since at least

1998 to date, and he is the person who is in the best position to testify as to when the

unauthorized recordings and copies were made, by whom they were made, where they

were archived, and what was purged, or not purged.

Plaintiff is thus fully justified in seeking more information from Defendant in the

form of interrogatories, document requests and depositions as they relate to the root cause

of the present case, which stems directly from CBS's failure to fully disclose information

in the 1998 Action. As it is Defendant's failure to fully and properly disclose information

from the 1998 Action which brings us to the circumstances of the present action, it is

highly ironic that Defendant should oppose Plaintiff's request for more information on

what was not disclosed years ago but what should have been disclosed. While Plaintiff is

coming to understand just how Defendant could have managed to repeat virtually the

same copyright infringements in both actions—the present action due entirely to

Defendant's concealment of vital information from the 1998 Action—Plaintiff would

expect Defendant's full cooperation in getting to the bottom of what actually happened so

that it does not happen again.  Since discovery to date has not yet revealed a complete

picture of the circumstances of the case, Plaintiff needs the further information via a few

additional interrogatories and document requests and two depositions.

> **G.    The Settlement Agreement and Release executed by the parties in the 1998 Action does not extend to the bootleg copy of the 60 Minutes tape or the subsequent "Pitch Reel" made by WBZ-TV.**

On March 16, 1998, Fitzgerald licensed CBS to use the Flemmi Photographs on

*60 Minutes* for limited purposes.  [Exhibit C]  Fitzgerald did not authorize any CBS

affiliate, which would include WBZ-TV, to make an unauthorized copy of the *60 Minutes*

story in which one of Plaintiff's Flemmi photographs appears five times.  [See, Exhibit

C.]  Certainly, Fitzgerald did not authorize WBZ-TV to make the so-called pitch reel

from the bootlegged copy of the *60 Minutes* program.

Fitzgerald, CBS and WBZ-TV settled the 1998 Action and signed an agreement

releasing each other from all claims, demands, and actions between them on the express

"promises, covenants and warranties" that neither party was aware "of any uses by the

Defendant of the photographs at issue in the Lawsuit other than those that have been

disclosed in the pleadings filed and discovery conducted in the Lawsuit."  [Exhibt F, ¶ 5.]

Fitzgerald did not know that WBZ-TV made an unauthorized copy of the *60 Minutes*

broadcast and the pitch reel until he received CBS's answers to interrogatories in this

Action.  [Fitz. Aff. 11.]  In the settlement of the 1998 Action, CBS represented and

warranted that it was unaware of any uses by the Defendant other than those disclosed in

the pleadings that were filed and in disclosed discovery.  Since the release was given "in

consideration of the mutual promises, covenants, and warranties" contained in the Mutual

Settlement and Release, Fitzgerald never released WBZ-TV from making the undisclosed

and unauthorized copy of the *60 Minutes* broadcast or the subsequent pitch reel. If

Fitzgerald had known that WBZ-TV made a copy of the *60 Minutes* broadcast, he would

have insisted that WBZ-TV destroy the tape as part of his Settlement with CBS. [Fitz.

Aff. 12.] This is consistent with Fitzgerald's insistence in his Stock Photography

Contract of March 16, 1998, in which he did not give CBS "<u>or its affiliates</u>" permission

to republish, use or rebroadcast the Flemmi Photographs. [Emphasis supplied.] [See,

Exhibit C.]

II.  **<u>ARGUMENT</u>**

    A.  **Jennifer Street, WBZ-TV's News Director, had some knowledge of the news department, but Eric Cox was in charge of the film library and Cox created the computer program for the library and is a critical witness for Plaintiff to attempt to show "willful infringement."**

One consequence of the 1998 Action, was that WBZ-TV was clearly on notice

that Fitzgerald's Flemmi Photographs were the copyrighted work of Plaintiff. CBS paid

Fitzgerald for the limited right to use both of the Flemmi Photographs in the original *60*

*Minutes* broadcast in 1998, and it paid Fitzgerald an additional $15,000 to settle the 1998

copyright Action. While WBZ-TV may not have specifically admitted liability in the

1998 Action, it certainly was aware of Fitzgerald's claim of ownership of the Flemmi

Photographs. Moreover, Jennifer Street who is now the news director of WBZ-TV, and

who was the spokesperson for CBS in a Rule 30(b)(6) deposition, has been employed by

CBS in the news department since 1990. [Street dep. p. 9.] Ms. Street has worked in

various positions at WBZ-TV and was executive producer in charge of the 11 o'clock

news (starting in 1997) and then the executive producer of the Noon, 5:00 o'clock, 5:30,

and 6:00 o'clock newscasts, eventually becoming news director in 2005. [Street dep. p.

9-10, 15-20.] Her duties were to supervise the anchors, the reporters, the producers of the programs, the writers and the editors. [Street dep. p. 17, l. 9-16.] Therefore, Ms. Street should have been aware that Fitzgerald was claiming rights to the Flemmi Photographs, since the 1998 Action was conducted during Ms. Street's tenure at WBZ-TV, and, indeed, she recalls the order to purge all records of the Flemmi Photographs in or around 1998. [Street Dep. p. 59.] Similarly, Eric Cox was and still is the film librarian for WBZ-TV, a position he also held during the commencement and settlement of the 1998 Action. [Street Dep. p. 37-8.] Clearly, both Jennifer Street and Eric Cox should have questioned the station's use of Fitzgerald's Flemmi Photograph in 2004.

In addition, Eric Cox is in a much better position to explain what programs WBZ-TV records on a routine basis and how long it keeps the tapes than is Jennifer Street who was Defendant's 30(b)(6) witness, because this is part of Eric Cox's job. For example, when Ms. Street was asked for how many months WBZ-TV keeps copies of the *60 Minutes*' broadcasts, she answered: "I don't know the exact time period; say approximately six." [Street Dep. p. 39, lines 20-21.] Eric Cox or Tom Jannsen, his boss, should have this information without having to approximate as did Ms. Street. In addition, Eric Cox created the computer system for the station's library archives and is much better qualified than Street to describe the contents of the library and the system for accessing the contents. [Street Dep. p. 50-4.]

The information that Eric Cox and Tom Jannsen have about the recording of the *60 Minutes* broadcast and the creation of the pitch reel are important with respect to proving willfulness under the Copyright Act, and thereby triggering an enhanced level of damages under Section 504(c)(2). "To prove 'willfulness' under the Copyright Act, the

plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights. (Willfulness in this context means that the defendant recklessly disregarded the possibility that its conduct represented infringement.)" [Citations omitted.]  Island Software and Computer Service, Inc. v. Microsoft Corp., 413 F.3d 257, 263 (2nd. Cir. 2005).  In Island Software, the court said that a jury could, without doubt, conclude that the defendant's statements reveal willful blindness, or that plaintiff established a pattern of conduct so unreasonable as to constitute reckless disregard.  Id., at 264.  If Fitzgerald is prevented from interrogating both Cox and Jannsen, he will be unable to establish that WBZ-TV's conduct in making and keeping a copy of the *60 Minutes* broadcast, and in making the pitch reel, and in failing to institute a system to safeguard against future infringements, was unreasonable and in reckless disregard of Fitzgerald's rights.

     **B.**    **The Release signed by the Parties to settle the 1998 Action was not as general and all-inclusive as WBZ-TV would like this Court to believe.**

Fitzgerald's licensing agreement with CBS for the use of his images on *60 Minutes* granted only limited rights to CBS.  "Additional uses and re-broadcasts of the photographs, beyond the terms of this agreement (which totals $1,300.00) would require further negotiation" [see Exhibit C, Stock Photography Contract].  Accordingly, Plaintiff never authorized CBS or its affiliates such as WBZ-TV, to make a copy of the *60 Minutes* story containing Plaintiff's Flemmi photographs for any purpose including for what WBZ-TV now claims is ease in locating images for later television use.

In the Mutual Settlement and Release which documents the settlement of the 1998 Action, CBS represented and warranted that it was "unaware of any uses by the Defendant of the photographs at issue in the Lawsuit other than those that have been disclosed in the pleadings filed and discovery conducted in the Lawsuit" [See, Exhibit F.] Defendant's copying of the *60 Minutes* story which included Plaintiff's Flemmi photograph, was described by Jennifer Street as "a matter of practice" [Street Dep. p. 22, lines 21-23], and in answers to interrogatories it was stated that "CBS 4 routinely recorded copies of all *60 Minutes* broadcasts to use as an internal resource in the event future news stories covered issues or events featured on *60 Minutes*." [Exhibit G, Int. # 3.] Yet this use was never disclosed to Plaintiff in the 1998 Action.  While archived in Defendant's library, the copy of the *60 Minutes* story was used to create a "pitch reel" that included Plaintiff's Flemmi photograph.  Both the *60 Minutes* broadcast and the pitch reel were archived in Defendant's library.  It was from this pitch reel that Defendant was able to access Plaintiff's photograph for use in the June 24 and 25, 2004 broadcasts, forming the basis for the second series of infringements and this Action.

However, it should be noted that although Jennifer Street claimed that routine copies of *60 Minutes* broadcasts are "held onto for several months and then the tapes get recycled," she also said that she did not know for how many months the tapes are kept. "I don't know the exact time period; say approximately six." [Street Dep. p. 39, lines 18-22].  The copy in which Plaintiff's photograph appears was never recycled since it was produced in discovery of this Action in 2005, seven years after it was supposedly made. In addition, one out of the five images of Plaintiff's photograph in the *60 Minutes* story was not "blacked out" in a "purge" conducted by Defendant as a result of the 1998

Action, and thus could also have been the source of the image that appeared in the June 24 and 25, 2006 broadcasts.  The pitch reel was clearly labeled under the category of "Crime" with the descriptor "Bulger/Flemmi" and shelved with other mafia stories so that WBZ-TV was able to find Plaintiff's photograph for the June 2004 broadcasts.

While part of the settlement agreement between Fitzgerald and CBS did say that CBS was released of all claims, this is only part of the agreement.  By the terms of the settlement, the agreement was made expressly "in consideration of the mutual promises, covenants, and warranties" contained in the agreement.  Since Defendant's warranty of all known uses of Plaintiff's photographs was clearly breached, Plaintiff cannot now be expected to simply ignore at least two uses that Defendant failed to disclose, particularly since these uses contributed directly to the infringements alleged in this Action.

C.    **Fitzgerald needs further information about the 1998 Action in order to help establish that WBZ-TV acted in reckless disregard of his rights and that its use of the Flemmi Photograph in 2005 was a willful infringement.**

Plaintiff does not deny that some of the additional discovery and information sought relates to the context of the 1998 Action.  However, it was not until the present action was instituted that Defendant revealed that copies of Plaintiff's Photograph was made and archived at WBZ-TV in two different ways; the original *60 Minutes* broadcast and the pitch reel.  Both tapes were found and produced in discovery for this Action, but were somehow not disclosed in the 1998 Action even though Jennifer Street testified that both were most likely created soon after the 60 Minutes story first aired in May 1998.  [Street Dep. P. 44.]  It is only as a result of the disclosure in the present Action that Plaintiff is seeking further information about what was concealed from him in the 1998

Action, the consequence of which led <u>directly</u> to the current claims of copyright infringement.

Furthermore, Plaintiff is not seeking damages for the 1998 copying of the *60 Minutes* broadcast; he is seeking damages for the re-broadcast of one of the Flemmi Photographs in June 2004. Plaintiff is simply attempting to determine the relevant context of the making and storage of the unauthorized copies of the *60 Minutes* broadcasts and the pitch reel so that a fair assessment of WBZ-TV's infringement, from innocent to willful, may be properly considered. That Defendant has disclosed further copies of Plaintiff's photograph in order to explain just how the alleged infringements were allowed to occur when the disclosure should have been made in the previous action has opened a can of worms that cannot now be closed. Plaintiff should be permitted to conduct a full investigation into the alleged infringements, particularly in light of the information Defendant concealed in the 1998 Action. Had Plaintiff been made aware of the *60 Minutes* copy of which Defendant warranted it was not aware, this action might never have been necessary. And in fact, when Jennifer Street was asked the following question: "And of course if the recording were never made, a pitch reel would never have been made. And if the pitch reel would never have been made, the June of 2004 broadcast of the news that contained Mr. Flemmi's photograph would never have been aired; would you agree with me?", Ms. Street answered: "I thought about that many times. Yes, I agree." [Street Dep. p.106, lines 5-12].

### D.    Archiving for possible future use is not fair use.

The issue of whether the copying and archiving of the *60 Minutes* story was fair use or copyright infringement is a serious issue that ought not to be taken lightly nor

dismissed in the flippant manner in which Defendant attempts to do.  Defendant claims

that "just as the defendant was allowed to sell videos of the 60 Minutes broadcast, it was

allowed to archive a video copy of the program".  [Defendant's Memo in Opposition, p.

7.]  This argument is without merit.  Selling video copies of 60 Minutes and archiving a

copy in Defendant's library are two entirely different and unrelated things.  Defendant's

only support for its contention is Sony Corp. of America v. Universal City Studios, 464

U.S. 417, 449 (1985) in which "time-shifting" (noncommercial recording of free

broadcast television programs at home to view once at a later time, and thereafter erased)

was held to be fair use.  This very specific type of use certainly did not sanction

"librarying" from which "time-shifting" was distinguished by the District Court in Sony.

[See, 480 F. Supp. 429, 467 (D.C. Cal., 1979).]  "The taping by commercial enterprises

for the benefit of their employees would be a commercial and nontransformative use and

thus unlikely to be fair use." (Patry, *The Fair Use Privilege in Copyright Law*, 1995, p.

491).  In fact, the few cases which have involved archiving have held that this does not

constitute fair use.  In American Geophysical Union v. Texaco, 60 F.3d 913 (C.A. 2,

1994), the systematic copying of scientific articles by corporation researchers for office

archive purposes (for "future retrieval and reference" Id. at 919) was found to not be fair

use.  New York Times v. Tasini, 533 U.S. 483 (2001) also held that licenses permitting

the New York Times to print articles by freelance writers did not extend to the articles

then being held and made available in the electronic databases of LEXIS/NEXIS.  These

cases indicate that if the copying of material to be 'archived' is not fair use, even to a

certain extent for educational purposes, then to archive a copy of Plaintiff's Photograph

for possible unknown future news reporting purposes should also not be fair use.  It is

unreasonable to infringe a copyright for the purpose of potential but not definite use, particularly when it is not known at the time whether the potential use of the material would be fair or not.

      **E.**      **Street admits that Cox is the person to ask about the original *60 Minutes* tape made by WBZ-TV.**

Plaintiff and Defendant agreed to the terms of the 1999 Settlement "in consideration of the mutual promises, covenants, and warranties" contained in the agreement. Fitzgerald relied on the warranty made by CBS that it had disclosed all known uses of Plaintiff's Flemmi photographs. We now know that CBS breached its warranty by withholding the fact that it made an off-air copy of the *60 Minutes* broadcast, and the subsequent pitch reel. This is what led directly to the June 2004 infringements. It was Defendant's careless, negligent, or intentional failure to disclose in the 1998 Action that a copy of the *60 Minutes* story was made by WBZ-TV that directly led to the alleged infringements in the current Action, that prompts Plaintiff to seek more related information through discovery and depositions. For Defendant to deny Plaintiff such relevant information by relying on the Mutual Settlement and Release is truly disingenuous.

In her Deposition, Jennifer Street repeatedly deferred to the knowledge of the CBS librarian and video manager, Eric Cox and his superior, Tom Janssen, since she was unable to provide important information about the creation, cataloging, and archiving of the *60 Minutes* copy and pitch reel. For example, Street did not know the meaning and significance of all notations that were on the pitch reel [Street p. 51-2]; nor did she ask Eric Cox what they meant. [Street Dep. p. 54.] Street also admitted that she was not the

person who instructed Eric Cox to "black-out" the Flemmi photographs from the archives. [Street, dep. p. 59.]  Furthermore, when Street was asked if WBZ-TV ever disclosed to CBS Corporation that it made a copy of the 60 Minutes broadcast, she said she didn't know, but admitted that "Eric Cox would be the person to ask because he's the one that got rid of the *60 Minutes*' tape." [Street dep. p. 116-117.]

## III.    <u>CONCLUSION</u>

In light of Defendant's prior concealment of the copy of the *60 Minutes* broadcast and the pitch reel, and the lack of information surrounding these copies which forms the heart of this case, Plaintiff respectfully requests the Court to grant Plaintiff's Motion for Leave for further discovery by way of interrogatories and requests for documents, and deny Defendant's Motion for a Protective Order, and order that the requested depositions be held as soon as possible.

CHRISTOPHER FITZGERALD,
By his attorney,

/s/ Andrew D. Epstein
_____
August 28, 2006                    Andrew D. Epstein, Esquire
BBO #155-140
Barker, Epstein & Loscocco
10 Winthrop Square
Boston, MA  02110
(617) 482-4900
FAX: (617) 426-5251