UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRISTOPHER FITZGERALD, ) <br> ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> CBS BROADCASTING, INC., ) <br> ) <br> Defendant ) | CIVIL ACTION NO. <br><br> No. 04-12138-NG |

**PLAINTIFF'S AFFIDAVIT IN SUPPORT OF HIS MOTION
FOR PARTIAL SUMMARY JUDGMENT**

I, Christopher Fitzgerald, on oath depose and state as follows:

1. I have been a professional freelance photographer for many years.

2. On January 6, 1995, acting on a tip from the *Boston Globe*, I went to the Framingham State Police barracks to photograph the notorious mafia hit man, Stephen ("The Rifleman") Flemmi. Flemmi, who is now serving life in prison for numerous murders, was an associate of James "Whitey" Bulger, the fugitive mobster boss who heads the FBI's Most Wanted List.

3. I was able to take two photographs of Flemmi, one of him looking ahead to the right and one of him looking to the left. I was the only photographer in Framingham at the time of Flemmi's transfer to an undisclosed location.

4. On the following day, one of my two photographs of Flemmi was published on the front page of the *Boston Globe*.

5. I own the copyrights to both photographs (the "Flemmi Photographs") both of which were registered with Copyright Office on February 10, 1998. The Flemmi photographs have been given Copyright Registration Numbers VA900-332 and VAu411-320.

6. To the best of my knowledge and belief, the Flemmi Photographs are the best relatively recent images of Flemmi that are available for publication. Flemmi's official arrest photographs have apparently never been released by the authorities.

7. The Flemmi Photographs have been used and published on numerous occasions both with my permission and without my permission. I have pursued all claims for the unauthorized uses of the Flemmi Photographs. To date, I have earned $4,350 in licensing fees for <u>authorized</u> uses of the Flemmi Photographs, and $58,600 in settlements for <u>unauthorized</u> uses of the Flemmi Photographs, including a payment of $15,000 from CBS in 1999. [See, the Exhibit attached to this Affidavit for a list of authorized and unauthorized uses.]

8. In 1998, WBZ-TV, a CBS affiliate, used one of the Flemmi Photographs without my permission.

9. In 1998, I made a claim against WBZ-TV for the unauthorized use of one of my Flemmi Photographs, and later my attorney filed a lawsuit in this Court alleging that WBZ-TV copied one of the Flemmi Photographs from the *Boston Globe* and broadcast it on Channel 4 on numerous occasions without my permission. [S<u>ee</u>,

Fitzgerald v. CBS Corporation, US District Court, District of Massachusetts, Docket Number 98-11510-JLT (the "1998 Action").]

10.     In March 1998, while my lawsuit against WBZ-TV was pending, the CBS television network in New York, contacted me to see if CBS could get a license to use the Flemmi Photographs on *60 Minutes*, a nationally broadcast CBS television program.

11.     I licensed CBS to use both of my Flemmi Photographs on *60 Minutes* each for "one single screen exposure." The licensing agreement specifically says that I did "not grant CBS or its affiliates the permission to republish these photos on other television programs or in other media" and that "additional uses and re-broadcasts . . . would require further negotiation."

12.     I also sent a letter to the producer of *60 Minutes* on March 18, 1998, in which I said that I wanted CBS to "include a copyright notice in the show credits." The letter further stated that I was "leery of other news organizations gleaning the photos without… permission, especially since these are the only topical photos – still or video—that exist of Mr. Flemmi (at least to the best of my knowledge)." CBS agreed to the limited usage of the Flemmi Photographs.

13.     When CBS broadcast the 60 Minutes program with the story about Flemmi, I discovered that CBS used one of my Flemmi Photographs for a total of five single screen exposures, four exposures more than CBS was licensed to use the image. My lawyer amended my Complaint in the 1998 Action and alleged the further infringement of my Flemmi Photographs by CBS on *60 Minutes*.

14.     In November 1999, CBS and I settled the 1998 Action for $15,000.

15. In June 2004, WBZ-TV (now called "CBS 4 Boston") used one of my Flemmi Photographs without permission or authority on various news broadcasts as well as on the WBZ-TV website.

16. To the best of my knowledge and belief the Flemmi Photographs are rare and valuable, and I have carefully monitored and controlled both photographs in order to prevent unauthorized uses and to preserve the continuing value of the Flemmi Photographs.

17. If I had known that WBZ-TV Boston copied the 60 Minutes program with the story about Flemmi, and included my photos in a so-called "pitch reel" from that broadcast, I would have insisted that the station delete my photos from those tapes as part of my settlement with CBS.

18. I believe that few photographs of Stephen Flemmi are known to exist, and most of them are outdated or recent mug shots. My photos are the only ones that reveal his appearance and street attire during the period of his final arrest in 1995. My photos are the only ones that depict him being led away by troopers, a significant moment in a crime saga that continues to this day.

19. As more news unfolds about Flemmi and Bulger, I will attempt to market these Photographs as I have done in the past on numerous occasions. But CBS's unauthorized and repeated broadcasts of these Photographs has seriously damaged the value of my copyrights and usurped my marketplace.

20. As a professional freelance photographer, my living depends in part on my ability to license exclusive images to the marketplace. This is why I have been careful to control the use of my Flemmi Photographs and to aggressively pursue all unauthorized



uses. CBS's disregard and disrespect for my copyrights has diluted the value of my photographs and adversely impacted my income.

Signed under the pains and penalties of perjury this 1st day of September 2006.

*[signature: Christopher Fitzgerald]*

CHRISTOPHER FITZGERALD,

# EXHIBIT

### Income and Usage History of Steven Flemmi Photographs
(Dates are approximate)

$150.00:  Boston Globe, Page 1, January 7, 1995

$75.00:   Boston Globe file photo, Page A10 on June 7, 1997

$75.00:   Boston Globe file photo, Page B6 on June 26, 1997

$800.00:  America's Most Wanted broadcast on January 5, 1998

$75.00:   Boston Globe file photo, Page A10 on January 8, 1998

$75.00:   Boston Globe file photo, Page B3 on January 11, 1998

$1,300.00: Sixty Minutes TV broadcast on May 10, 1998

$175.00:  American Lawyer Magazine license on May 17, 1998

$75.00:   Boston Globe file photo, Page B8 on June 12, 1998

$75.00:   Boston Globe file photo, Page A7 on July 20, 1998

$125.00:  New York Times use, Page A7 on March 13, 1999

$100.00:  New York Times second use, sometime in Spring, 1999

$5,000.00:  Settlement on January 19, 2000 of infringement case against Boston Television station.

$1,600.00:  Settlement on May 19, 2001 of infringement case against newspaper.

$15,000.00:  Settlement on November 22, 1999 of infringement case against Boston Television Station & Network.

$10,000.00:  Settlement on June 22, 2001 of infringement case against Boston Television Station

$150.00:  Authorized re-use by UHF Boston Television Station on November 19, 2000.

$300.00:  Authorized re-uses by Boston Herald on May 15, 2001 and July 9, 2001.

$21,000.00:  <u>Settlement</u> on August 17, 2001 of infringement case against UHF Boston Television Station.

$150.00:  Payment on August 30, 2001 for unauthorized re-use of the photo by Local Newspaper.

$6,000.00:  <u>Settlement</u> on May 2, 2002 for infringement case against local Boston newspaper for posting of one of the Flemmi Photographs on its website.

$800.00:  Authorized rebroadcast by Television Network.  Contract date was June 14, 2003.

Commonwealth of Massachusetts

September _1_, 2006

Christopher Fitzgerald, whose voice is well known to me, affirmed by telephone that the statements in the above affidavit are true to the best of his knowledge and belief, except as to those matters that are based on knowledge and belief, which he stated that he believes them to be true.

_____
Andrew D. Epstein
Notary Public
My Comm. Exp. Jan. 24, 2008