respect to the second factor. See, e.g., Arica, 970 F.2d at 1078.

By Fitzgerald's own admission, the Photograph has been published or broadcast no less than 22 times from 1995 to the present. See Income and Usage History of Stephen Flemmi Photographs, attached as an exhibit to the September 1, 2006 Affidavit of Christopher Fitzgerald. See also Shoptalk, Ltd. v. Concorde-New Horizons Corp., 168 F.3d 586, 591 (2d Cir. 1999) ("[O]nce a work is published with the author's consent in any medium" the work has been published). These prior publications support a finding in favor of CBS with respect to the second factor.

Fitzgerald disingenuously argues that because "it was CBS who previously published Fitzgerald's work" in 1998, the second factor favors the plaintiff. Fitzgerald's Brief at 11. The undisputed record shows that CBS was not responsible for the first publication of the Photograph by *The Boston Globe* in 1995, nor is it in any way connected to 20 of the 22 the uses of the Photograph acknowledged by Fitzgerald. Because the "first appearance of the [Photograph] ha[d] already occurred" nine years before the use at issue in this case, the second factor favors CBS. Kelly, 336 F.3d at 820. See also Nuñez, 235 F.3d at 24 (fact that use did not "threaten ... right of first publication" favored finding of fair use).

Courts applying the second factor also have considered whether a work is a creative work "enjoying broader copyright protection as opposed to a factual work requiring broader dissemination." Nuñez, 235 F.3d at 23. On this point too, Fitzgerald ignores controlling precedent, devoting just one sentence in his brief to the conclusory assertion that "[t]here is no question that" the Photograph is "creative expression." Fitzgerald Brief at 11.

The First Circuit considered and rejected a similar argument in Nuñez, 235 F.3d at 23. The plaintiff in Nuñez was a photographer who took several photographs of "Miss Puerto Rico Universe" for the beauty contestant's modeling portfolio. 235 F.3d at 20. In

affirming the grant of summary judgment on fair use grounds, the First Circuit found that the photographs "were not artistic representations designed primarily to express [the photographer's] ideas, emotions, or feelings," but rather were an attempt to highlight the subject's abilities as a potential model. Id. Under these circumstances, because the photographs could be considered as both creative and factual in nature, the court held that "the impact of their creativity on the fair use finding is neutral." Id.

The undisputed record in this case demonstrates that the Photograph is primarily factual in nature. Fitzgerald did not select the subject of the Photograph, his wardrobe, or his pose, nor did Fitzgerald exercise any influence over the location, timing, lighting or setting of the Photograph. Under these circumstances, the Photograph is not an "artistic representatio[n] designed primarily to express [Fitzgerald's] ideas, emotions, or feelings," but rather is primarily "a factual work requiring broader dissemination." Nuñez, 235 F.3d at 23. Because the Photograph is a previously published work that is primarily factual in nature, the second factor favors a finding of fair use.

3.  **The Amount and Substantiality of the Use Either Favors CBS or Is Neutral in this Case.**

The third factor under § 107(2) is the "amount and substantiality of the portion used in relation to the copyrighted work as a whole." Fitzgerald concedes that the entire Photograph was not used by the defendant and that CBS "cropped the photograph to exclude the police officers who were escorting Flemmi to prison." Fitzgerald's Brief at 12. He nevertheless contends that because Flemmi's "head and face" were visible in the Photograph, factor three favors the plaintiff.

Once again, Fitzgerald ignores the First Circuit's holding in Nuñez. Although the defendant in Nuñez "admittedly copied the entire picture," the First Circuit cautioned that factor three requires a "flexible" inquiry that "must focus upon whether 'the extent of ... copying' is consistent with or more than necessary to further 'the purpose and character of the use.'" 235 F.3d at 24. Because "copy[ing] any less than [the full photograph]

would have made the picture useless to the story," the court held that factor three was of "little consequence" to the fair use analysis. Id. See also Graham, 448 F.3d at 613 ("courts have concluded that such copying does not necessarily weigh against fair use because copying the entirety of a work is sometimes necessary to make a fair use of the image").

The facts of this case are even more favorable to the defendant than in Nuñez. By removing from the Photograph the police officers escorting Flemmi to prison after his arrest in 1995, CBS ensured that the original context of the Photograph -- the very reason Fitzgerald was sent by the *Globe* to take the Photograph -- was excluded from the broadcast. Moreover, as in Nuñez, excluding Flemmi's face from the Photograph "would have made the picture useless to the story." 235 F.3d at 24. Accordingly, CBS's use of less than the entire Photograph compels the legal conclusion that factor three either favors the defendant or, at a minimum, is neutral.

4.      **The Competitive Impact of the Use.**

The fourth and final factor -- the "effect of the use upon the potential market for or value of the copyrighted work" -- also supports CBS's fair use defense. 17 U.S.C. § 107(4). In Nuñez, the First Circuit interpreted factor four as requiring an analysis of the effect of the copying on the "market for the reproduced photographs." 235 F.3d at 24. This inquiry "is restrained to: (i) 'the extent of market harm caused by the particular actions of the alleged infringer'; and (ii) 'whether unrestricted and widespread conduct of the sort engaged in by the defendant ... would result in a substantially adverse impact on the potential market.'" Id., quoting Infinity Broad. Corp. v. Kirkwood, 150 F.3d 104, 110 (2d Cir. 1998). See also Castle Rock, 150 F.3d at 145 (fourth factor looks to "whether the secondary use usurps or substitutes for the market of the original work"). In all events, however, "[t]he overall impact to [Fitzgerald's] business is irrelevant to a finding of fair use." Nuñez, 235 F.3d at 24.

The undisputed facts in this case conclusively demonstrate that CBS's use did not affect the potential market for the Photograph. Fitzgerald has offered no evidence that CBS's use had any effect on his ability to market the Photograph. Compare Harper & Row, 471 U.S. at 567 (unauthorized use caused cancellation of serialization of work and loss of $12,500 fee). To the contrary, according to Fitzgerald's testimony, the market value of the Photograph depends upon the "the interest in the public at that time and date of the story." SOF at ¶44; Fitzgerald Dep. at 108:18-108:24. In his summary judgment papers, Fitzgerald concedes that the market for the Photograph "heats up whenever Stephen Flemmi and his partner in crime, Whitey Bulger[,] come up in the news. As more news unfolds about Flemmi and Bulger, Fitzgerald will have continuing opportunities to exploit the market" for the Photograph. SOF at ¶45; Fitzgerald Brief at 12-13. CBS's use thus had no effect on the factors that, by Fitzgerald's own admission, determine the market value of the Photograph.

In addition, just as the Nuñez Court concluded that "[t]he fact that a relatively poor reproduction was displayed on the cover of a newspaper should not change the demand for [the copyrighted work]," so too here, CBS's brief use of the Photograph during a televised newscast did not change the demand for the Photograph which, according to Fitzgerald, "heats up" whenever Flemmi and Bulger "come up in the news." 235 F.3d at 25; Fitzgerald Brief at 12-13. To paraphrase the First Circuit in Nuñez, "even if there was widespread conduct of this sort, it would have little effect on the demand for disseminated pictures because a newspaper front page [like a two second televised image] is simply an inadequate substitute for an 8 x 10 glossy." Id.

As courts have consistently recognized, where a defendant has produced a transformative work like a news report that would otherwise qualify for fair use, and the secondary work does not interfere with the market for the original work, the fourth factor favors the defendants as a matter of law. See, e.g., Liebovitz, 137 F.3d at 116-17; Castle

21

Rock, 150 F.3d at 146 n.11. Accordingly, because CBS's use of the Photograph was transformative, for purposes of news reporting, and did not compete with or substitute for the original Photograph, CBS is entitled to judgment as a matter of law.

Unable to offer any admissible evidence that CBS's conduct had an effect on the potential market for or value of the Photograph, Fitzgerald's factor four analysis relies entirely on the circular argument that a fair use finding would prevent him from obtaining licensing fees for the Photograph and thus damage his "living as a professional photographer." Fitzgerald's Brief at 13. As a matter of law, however, this assertion fails to establish market impairment under the fourth fair use factor. As the Second Circuit has held, a copyright plaintiff "is not entitled to a licensing fee for a [use] that otherwise qualifies for the fair use defense." Leibovitz v. Paramount Pictures Corp., 137 F.3d 109, 117 (2d Cir. 1998). See also Ringgold v. Black Entertainment Television, Inc., 126 F.3d 70, 81 (2d Cir. 1977) ("[s]ince the issue" in every fair use case "is whether the copying should be compensable, the failure to receive licensing revenue cannot be determinative in the plaintiff's favor"); Graham, 448 F.3d at 614 ("were a court automatically to conclude in every case that potential licensing revenues were impermissibly impaired simply because the secondary user did not pay a fee for the right to engage in the use, the fourth fair use factor would *always* favor the copyright holder") (emphasis in original; internal quotations and citation omitted).

Moreover, Fitzgerald's argument ignores the fact-specific nature of the fair use inquiry. See, e.g., Nuñez, 235 F.3d at 21; Arica, 970 F.2d at 1077. Holding that CBS made a fair use of the Photograph in a breaking news report the day of Martorano's sentencing does not mean that every future use of the Photograph -- cropped or uncropped -- necessarily is a fair use. The only question presented in this case is whether *this* use of the Photograph was a fair use. Sweeping generalizations about other types of uses, or even other news reports, are largely irrelevant because the particular combination

22

of facts presented by other uses could produce entirely different results. Id. On the facts of this case, however, a finding of fair use is required as a matter of law.[12]

5. **The Statutory Factors Require a Finding of Fair Use.**

The foregoing discussion demonstrates that the statutory fair use factors overwhelmingly favor the entry of summary judgment for CBS. The Photograph was used in a transformative news report, was widely published before 2004, is primarily factual in nature, was used only to the extent necessary to further the purpose and character of the use, and did not have a competitive impact on the market. Summary judgment therefore should enter for the defendant as a matter of law. See, e.g., Sony Corp. of America v. Universal Studios, Inc., 464 U.S. 417, 450 (1984) (finding fair use when three of four fair use factors favored defendants); Nuñez, 235 F.3d at 21 (finding fair use where three factors favored defendant and fourth factor was essentially neutral); Liebovitz, 137 F.3d at 114-117 (finding fair use where two factors favored the defendant and two slightly favored plaintiff); Sandoval v. New Line Cinema Corp., 43 U.S.P.Q.2d (BNA) 1949, 1951-53 (S.D.N.Y. 1997) (finding fair use where only one factor strongly favored defendant and remaining factors favored plaintiff).

6. **The Non-Statutory Factors Cited by Fitzgerald Are Irrelevant to the Fair Use Analysis.**

Fitzgerald contends that consideration of certain non-statutory factors militate against

---

[12] The Nuñez Court noted that the widespread unauthorized use of copyrighted photographs by newspapers could have an effect on the potential secondary market for sales to newspapers. 235 F.3d at 24-25. At the same time, the court made clear that "[t]he overall impact to [a photographer's] business is irrelevant to a finding of fair use." Id. at 24. In this case, Fitzgerald's failure to show any market harm, his admission that "continuing opportunities to exploit the market" will occur whenever the Flemmi/Bulger story "heats up," and the fact-intensive nature of the fair use analysis amply demonstrate that CBS's use had no competitive impact on Fitzgerald apart from his circular argument -- present in all cases -- that a finding of fair use will deprive him of the right to a licensing fee.

Murrane Affidavit.[13]

Fitzgerald also claims that simply by having an archive copy of a *60 Minutes* report in which the Photograph appeared, CBS violated the Copyright Act, the parties' 1999 settlement agreement and the 1998 Stock Photograph Agreement between Fitzgerald and CBS. See Fitzgerald's Brief at 14-15. These are specious arguments. The Copyright Act clearly does not prohibit CBS from storing a copy of one of its own broadcasts. See Sony, 464 U.S. at 449 (taping of television programs for later viewing fair use under copyright law).

In addition, nothing in the 1999 settlement agreement required CBS to destroy all copies of the Photograph or its prior broadcasts, or to provide Fitzgerald with an inventory of all archive copies of *60 Minutes* reports. Section 5 of the settlement agreement simply provided that neither party was aware of any prior *uses* of the Photograph other than those previous broadcasts that already were known to the parties. See 1999 Settlement Agreement, § 5, attached as Exhibit 13 to Murrane Aff. Retaining a copy of a previously aired news report did not violate the terms of the settlement agreement.

Finally, Fitzgerald's 1998 Stock Photograph Agreement with CBS granted him absolutely no right to control whether CBS could keep a copy of its own broadcast. Fitzgerald cannot point to even one provision of the Agreement that supports such a claim. To the contrary, the Agreement expressly allows *60 Minutes* to include the Photograph "in video sales of the two segments in which [it] aired." See Stock Photography Contract at ¶5, attached as Exhibit 11 to Murrane Aff. Having agreed that CBS may sell copies of the *60 Minutes* broadcast to third parties to keep in their

---

[13] Moreover, even assuming, arguendo, that the 1999 settlement agreement could somehow be construed as a license, as the Supreme Court recognized in Campbell, seeking a license in a "good faith attempt to avoid…litigation" does not affect the question of whether a use is fair. 510 U.S. at 585 n. 18.

25

collections, Fitzgerald cannot seriously contend that CBS breached the contract by keeping an archive copy of the program.[14]

As the preceding discussion demonstrates, not only are Fitzgerald's "non-statutory" arguments meritless, they have absolutely no bearing on the issue actually before this court -- whether the inclusion of the Photograph in a breaking news report about Martorano's sentencing on January 24, 2004 was a protected fair use. Under these circumstances, where the statutory fair use factors overwhelmingly favor a finding of fair use, Fitzgerald's motion for partial summary judgment should be denied, and judgment in CBS's favor should be entered as a matter of law.

### THE COPYRIGHT ACT PRECLUDES FITZGERALD FROM RECOVERING DOUBLE DAMAGES AGAINST CBS FOR ALLEGED INFRINGEMENTS OF THE SAME WORK.

During the course of this litigation, Fitzgerald claimed that he was entitled to *two* sets of statutory damages against CBS under 17 U.S.C. §504(c)(1). His stated rationale was that because CBS allegedly aired the Photograph on CBS 4 and on UPN 38, he is entitled to a double recovery -- $150,000 for the CBS 4 broadcasts and another $150,000 for alleged UPN 38 broadcasts. This double damages claim had an obvious impact on the case, particularly since discovery showed that the most Fitzgerald ever has been paid for licensing the Photograph for a single use is $800. See SOF at ¶43. As Magistrate Collings stated in the Report of Alternative Dispute Resolution Provider (docket entry 14): "Further progress [on resolving the case]

---

[14] The cases relied on by Fitzgerald also are inapposite. New York Times Co. Inc. v. Tasini, 533 U.S. 483 (2001) held that a newspaper did not have the right to distribute the content of freelance writers' work product to third-party vendors who charge for access to their archives. American Geophysical Union v. Texaco, 60 F.3d 913, 915 (2d Cir. 1995) held that an employee is not entitled to make copies of technical journals circulated by his employer in order to maintain his own personal archive. Neither case supports Fitzgerald's position that CBS is not permitted to make a keep copies of its own broadcasts.

LITDOCS/653667.1

might be possible once a legal determination is made as to whether the case involves just one use or two uses (CBS 4 and Channel 38) of the copyrighted picture(s), since such a decision will determine the maximum statutory damages which can be awarded at trial."

Rather than presenting this issue in his motion for partial summary judgment, on July 28, 2006, Fitzgerald chose to file a duplicative lawsuit against CBS, purporting to state a claim based only on the use of the Photograph in reports on the Martorano sentencing that allegedly aired on UPN 38 on June 24 and 25, 2004. See Fitzgerald v. CBS Broadcasting Inc., D. Mass. 06-CV-11302-NG. CBS has separately moved to dismiss this duplicative lawsuit as an impermissible attempt to recover double damages by claim splitting, a motion CBS respectfully incorporates by reference herein. SOF at ¶61; (Docket Paper 4). Because, as Magistrate Collings' Report indicates, Fitzgerald has raised in this case the same issue of whether he is entitled to double statutory damages, CBS requests that the court grant summary judgment dismissing the claim as a matter of law for reasons set forth below.

A. **The Copyright Act Prohibits Double Recovery from the Same Defendant for Multiple Infringements of the Same Work.**

The Copyright Act is crystal clear that a plaintiff is limited to *one* award of statutory damages against any *one* defendant for all infringements of any *one* work:

> [T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, *an award* of statutory damages *for all infringements* involved in the action, with respect *to any one work*, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally.

17 U.S.C. §504(c)(1) (emphasis added).

Any conceivable doubt about this issue was definitively resolved by the First Circuit's decision in Venegas-Hernandez v. Sonolux Records, 370 F.3d 183 (1st Cir.

2004). The plaintiffs in <u>Sonolux</u> owned the copyright to two songs that the defendant had used on at least 16 different albums. 370 F.3d at 185-86. The plaintiffs sought to collect separate statutory damages awards for each of the 16 infringing albums. In an opinion that carefully examined the statutory framework, legislative history and case law concerning the Act's statutory damages provisions, the First Circuit squarely rejected the plaintiffs' claim for multiple statutory damages.

> [U]nder § 504(c) the total number of "awards" of statutory damages that a plaintiff may recover in any given action against a single defendant depends on the number of *works* that are infringed and the number of individually liable *infringers* and is unaffected by the number of *infringements* of those works. That reading works in the overall context of the statute, flows naturally from the statutory language, and is supported by the legislative history.

370 F.3d at 194 (emphasis in original). See also <u>Twin Peak Prods., Inc.</u> v. <u>Publications Int'l. Ltd.</u>, 996 F.2d 1366, 1381 (2d Cir. 1993) ("The current statute shifts the unit of damages inquiry from number of infringements to number of works."); <u>Walt Disney Co.</u> v. <u>Powell</u>, 897 F.2d 565, 569 (D.C. Cir. 1990) ("Both the text of the Copyright Act and its legislative history make clear that statutory damages are to be calculated according to the number of works infringed, not the number of infringements."); <u>Davis</u> v. <u>E.I. DuPont de Nemours & Co.</u>, 249 F. Supp. 329, 342-343 (S.D.N.Y. 1966) (same).

In this case, there is no dispute that only *one* defendant (CBS) has been sued and that only *one* work (the Photograph) is at issue. Under these facts, the statutory language and case law are clear: Fitzgerald may seek only one statutory damages award for the use of the Photograph by CBS, regardless of whether CBS aired the report on UPN 38, CBS 4, or both.

Fitzgerald apparently seeks to ignore the fact that he has just one defendant in the hopes that the two stations will be treated as distinct legal entities separately liable for

statutory damages. This is a wholly untenable position. CBS 4 and UPN 38 are assets wholly owned and operated by CBS. They have no separate corporate existence. SOF at ¶28; (Answer of CBS Broadcasting Inc.; Ownership Report for Commercial Broadcast Stations filed by Viacom Inc. (n/k/a CBS Corp.)) They operate as "sister stations," physically located in the same office space. Their news operations share studio space, a video library, and news equipment, as well as employee resources such as writers, reporters, camera crew, on-air personalities, producers and directors. SOF at ¶5; Street Dep. at 137:16-138-4; 126:2-132:2. For example, when CBS 4 finishes its broadcast of the news at 6:58 p.m., the same anchors stay at their desk, a new background is put into place behind them and the same two anchors then report the 7:00 p.m. news on UPN 38. SOF at ¶¶29-30; Street Dep. at 130:9-130:21  The news programs are produced by the same employees whether the news is running on CBS 4 or UPN 38, and these employees are all paid by the same CBS entity. SOF at ¶6; Street Dep. at 140:5-140:11.

In short, CBS 4 and UPN 38 are no more separately subject to suit, or separately liable for damages, than are the FCC licenses or camera equipment also owned by CBS. Because Fitzgerald has sued only one defendant for alleged infringements of the same work, he is prohibited from recovering more than one set of statutory damages. Sonolux Records, 370 F.3d at 194.

Moreover, even if one were to engage in the pure fiction that it is the stations, not CBS, that have been sued, their joint operations would render them jointly and severally responsible for any liability that might be imposed for airing the Photograph. Because § 504(c)(1) provides that only one award of statutory damages may be made with respect to any one work "for which any two or more infringers are liable jointly and severally," suing the stations separately would not entitle Fitzgerald to more than one award of statutory damages. 17 U.S.C. § 504(c)(1).

In Bouchat v. Champion Products, Inc., 327 F. Supp.2d 537, 547-548 (D. Md. 2003), for example, the court rejected the very claim splitting rationale advanced by Fitzgerald in this case:

> [A]ccording to [plaintiff's] counsel, because he decided to file separate lawsuits, thereby splitting his claim ..., he can multiply the amount of the statutory damages award. ... Thus, [the plaintiff], whose actual damages are no more than $10,000 and whose work has been found to have contributed nothing to the infringers' profits, can ask a jury to exercise its discretion to make him a multi-millionaire. *[T]he Court concludes that [the plaintiff] is not entitled to the windfall that he seeks.*

Bouchat, 327 F. Supp.2d at 547 (emphasis added). See also Fitzgerald Publishing Co. v. Baylor Publishing Co., 807 F.2d 1110, (2d Cir. 1986) (reversing and holding as "plain error of law" district court's finding that printer and publisher were not jointly and severally liable for copyright infringement of comic book).

In sum, even assuming, arguendo, that Fitzgerald can prevail on the merits of his copyright claim, he is limited to a maximum recovery of one award of statutory damages. Summary judgment therefore should enter dismissing Fitzgerald's claim for multiple statutory damages awards.

### FITZGERALD'S MOTION FOR A PARTIAL SUMMARY JUDGMENT RULING THAT CBS WILLFULLY INFRINGED HIS COPYRIGHT SHOULD BE DENIED

Fitzgerald's motion for partial summary judgment seeks a pretrial ruling that the defendant's conduct was a "willful" violation of the Copyright Act, entitling him to an enhanced statutory damages award of up to $150,000. 17 U.S.C. §504(c)(2); Fitzgerald Pub. Co. v. Baylor Pub. Co., 807 F.2d 1110, 1116-17 (2d Cir. 1986). Even assuming that CBS does not prevail on its fair use defense, Fitzgerald's motion should be denied.

As Fitzgerald concedes, in order to establish a willful copyright violation, he must prove that CBS acted with "knowledge that [its] conduct constitutes copyright infringement" or with "reckless disregard" of Fitzgerald's rights. Fitzgerald Brief at 18,

30

20. See also Video Views v. Studio 21, Ltd., 925 F.2d 1010, 1020-21 (7th Cir. 1991). This standard of "willfulness" stands in stark contrast to that of a "knowing infringement," the latter being conduct that lies somewhere between an "innocent" and a "willful" violation and which entitles a plaintiff to "non-enhanced" statutory damages of between $750 to $30,000. See 17 U.S.C. § 504(c)(1); 4 Nimmer on Copyright, §14.04[B][1][a] (2006); Boz Scaggs Music v. K&D Corp., 491 F. Supp. 908, 914 (D. Conn. 1980). Proof of an "innocent" violation, in turn, entitles the defendant to a reduced statutory damages award of not less than $200. 17 U.S.C. § 504(c)(2).

In Segrets, Inc. v. Gillman Knitwear Co., Inc., 207 F.3d 56, 66 (1st Cir. 2000), the First Circuit emphasized that a plaintiff's claim of a willful copyright violation is particularly unsuited for summary disposition:

> [T]he issue of willfulness must be remanded to a jury. Although [plaintiff]'s evidence is quite strong, the issue of willfulness involves witness credibility, resolving conflicts in testimony, and evaluating the weight of the evidence -- steps courts are not permitted to take in the directed verdict context.

See also Hutchinson v. Proxmire, 443 U.S. 111, 120 n.9 (questions concerning a defendant's state of mind do not readily lend themselves to summary disposition).

In Segrets, the First Circuit held that a summary finding of willfulness was improper even though the plaintiff's evidence was "quite strong." 207 F.3d at 66. In this case, the evidence of willfulness is anything but strong, a further reason to deny Fitzgerald's motion. Indeed, Fitzgerald has failed to submit any evidence that any CBS employee knew the use of the Photograph was a copyright violation, or that any employee involved in the Martorano news report was even aware that Fitzgerald had claimed an exclusive copyright in the previously published Photograph. Cf. New York Times v. Sullivan, 376 U.S. 254, 287 (1964) (proof of state of mind sufficient to establish knowing or reckless disregard for the truth requires evidence of knowledge on the part of

those "having responsibility for the publication" of the offending material).[15]

Fitzgerald's repeated citations to the parties' 1999 settlement agreement as evidence of willful conduct falls woefully short of establishing CBS's state of mind in 2004. It also flies in the face of the terms of Fitzgerald's agreement -- made with the benefit of counsel -- that the settlement "shall not be deemed a license fee, nor any admission, statement against interest or concession by [CBS] with respect to the claims and defenses asserted in the Lawsuit," but instead was made "to avoid the expense of litigation, without any admission of liability or concessions by either party as to the claims and defenses asserted in the Lawsuit." SOF at ¶ ; Mutual Settlement and Release at ¶ 14, attached at Exhibit 13 to Murrane Affidavit. Fitzgerald should not be permitted to attempt to twist a settlement to which he knowingly and voluntarily agreed into evidence of a willful copyright violation.

In addition, CBS's good faith assertion of the fair use defense -- whether successful or not -- precludes Fitzgerald from obtaining a finding of willfulness. In Princeton University Press v. Michigan Document Services, 99 F.3d 1381, 1392 (6th Cir. 1996), the Sixth Circuit reversed a summary judgment finding of willfulness, holding that although the district court correctly had rejected the fair use defense, the assertion of the defense was not so unreasonable as to constitute willfulness:

> Fair use is one of the most unsettled areas of the law. The doctrine has been said to be "so flexible as virtually to defy definition." ... The potential for reasonable disagreement here is illustrated by the forcefully argued dissents and the now-vacated panel opinion. In the circumstances of this case, we cannot say that the defendants' belief that their copying constituted fair use was so unreasonable as to bespeak willfulness. Accordingly, we shall remand the case for reconsideration of the statutory damages to be awarded.

---

[15] See generally Boz Scaggs, 491 F. Supp. at 914-15 (failure of station manager to take steps to ensure compliance with copyright law despite being "fully aware of the need to obtain the permission of a copyright owner before broadcasting that owner's composition on the radio" warranted assessment of non-enhanced statutory damages).

Id. (citation omitted). As in Princeton University Press, CBS's good faith assertion of the fair use defense precludes any finding of a willful infringement at the summary judgment stage or thereafter.

Finally, the preventative measures taken by CBS to avoid further litigation with respect to the Photograph also preclude any finding of willfulness. As detailed above, after the 1998 lawsuit, CBS instructed the CBS 4 librarian to review all archive tapes in the station's library and remove any images of the Photograph. It also sent a message via the internal e-mail system to all staff instructing them to search their individual files for copies of the Photograph and to destroy any tape in which the Photograph was used. There is nothing "willful" about such conduct. In fact, Fitzgerald's contention that CBS was "negligent" in failing to prevent the use of the Photograph by itself undercuts any claim of a willful violation. Fitzgerald Brief at 21.[16]

In sum, even assuming that Fitzgerald's copyright claim survives CBS's fair use defense, the record fails to support his contention that a finding of a willful copyright violation is warranted, or that he is entitled to an award of enhanced statutory damages of up to $150,000.[17]

---

[16] In Jobete Music Co. v. Johnson Communications, Inc., 285 F.Supp.2d 1077, 1091 (S.D. Ohio 2003), cited by Fitzgerald, the defendant did not assert any defense to the copyright claim, a far different situation than exists here. Swallow Turn Music, Inc. v. Wilson, 831 F. Supp. 575, 580 (E.D. Tex. 1993), also cited by Fitzgerald, recognized "two kinds of willfulness: (1) knowing that a particular performance is a copyright infringement, and (2) knowing that *the normal course of business* involves a *pattern of repeated copyright infringements*." (Emphasis added.) Neither situation is present here, particularly given Fitzgerald's agreement that the 1999 settlement was to avoid the expense of litigation and did not constitute an admission of liability. In Fitzgerald Publ'g Co., 807 F.2d at 1115, there was documentary evidence that the defendant willfully violated the plaintiff's copyright. No such evidence exists in this case.

[17] Fitzgerald's motion manages to combine a lack of legal support with a complete absence of any benefit to the parties or the court should his motion be granted. He proposes that after the court makes a pretrial ruling that CBS's conduct was willful, the jury be asked to assess damages. In order to do so, of course, the jury would be required

## III.    CONCLUSION

For the forgoing reasons, the defendant respectfully requests that the Court grant its motion for summary judgment and dismiss the plaintiff's complaint on fair use grounds. Alternatively, the defendant requests that the court enter summary judgment precluding the plaintiff from asserting a claim of multiple statutory damages awards and deny the plaintiff's motion for partial summary judgment in its entirety.

**Respectfully submitted,**

**CBS BROADCASTING INC.,**

By its attorneys,

/s/ Mary B. Murrane
Jonathan M. Albano, BBO#013850
Mary B. Murrane, BBO# 644448
**BINGHAM MCCUTCHEN LLP**
150 Federal Street
Boston, MA  02110
(617) 951-8000

Dated: September 20, 2006

### Certificate of Service

I hereby certify that this document, which was filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants by First Class U.S. Mail on September 20, 2006.

/s/ Mary B. Murrane
Mary B. Murrane

---

to hear the very same evidence on which Fitzgerald's motion and CBS's opposition is based, hardly an efficient use of private or public resources.

a finding of fair use in this case. Each one of these arguments fails as a matter of law.

For example, Fitzgerald contends that CBS's use of the Photograph without his permission and knowing that he likely would object to the use precludes a finding of fair use. See Fitzgerald's Brief at 10-12, 14-15. As the Supreme Court has made clear, however, "being denied permission to use [or pay license fees for] a work does not weigh against a finding of fair use." Campbell, 510 U.S. at 585 n. 18. In the words of the Second Circuit:

> One factor that is of no relevance to the fair use equation, however, is defendants' continued distribution of *The SAT* after Castle Rock notified defendants of its copyright infringement claim, because "[i]f the use is otherwise fair, then no permission need be sought or granted.... *[B]eing denied permission to use a work does not weigh against a finding of fair use.*" Campbell, 510 U.S. at 585 n. 18...; see Wright, 953 F.2d at 737 (rejecting as irrelevant to fair use analysis argument that defendant failed to get plaintiff's permission to create work).

Castle Rock, 150 F.3d at 146 (emphasis added).

Fitzgerald also improperly argues that CBS's decision to settle the copyright claim brought by Fitzgerald in 1998 militates against a finding of fair use in this case. To the contrary, just as "a publisher's willingness to pay license fees for reproduction of images does not establish that the publisher may not, in the alternative, make fair use of those images," Graham, 448 F.3d at 615, so too is the settlement of Fitzgerald's 1998 claim (based primarily on an entirely different use of the Photograph), wholly irrelevant to the court's fair use analysis in this case. Fitzgerald should be well aware of that fact, since he expressly agreed that the settlement of the 1998 case "shall not be deemed a license fee, nor any admission, statement against interest or concession by [CBS] with respect to the claims and defenses asserted in the Lawsuit" and further agreed that the settlement was made "to avoid the expense of litigation, without any admission of liability or concessions by either party as to the claims and defenses asserted in the Lawsuit." SOF at ¶ 48; Mutual Settlement and Release at ¶ 14, attached at Exhibit 13 to