UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CHRISTOPHER FITZGERALD, ) | |
| ) | |
| Plaintiff ) | |
| ) | CIVIL ACTION NO. |
| v. ) | |
| ) | No. 04-12138-NG |
| CBS BROADCASTING, INC., ) | |
| ) | |
| Defendant ) | |

**RESPONSE OF PLAINTIFF TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS (DOCUMENT 33) SUBMITTED IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff makes the following response to Defendant's statement of undisputed material facts that were submitted in support of Defendant's Motion for Summary Judgment.

1.   For the purposes of the Cross-Motion for Summary Judgment, Plaintiff admits the allegations of Paragraph 1.

2.   For the purposes of the Cross-Motion for Summary Judgment, Plaintiff admits the allegations of Paragraph 2.

3.   For the purposes of the Cross-Motion for Summary Judgment, Plaintiff admits the allegations of Paragraph 3.

4.   Plaintiff admits that Flemmi and Bulger are notorious Boston crime figures. Plaintiff denies the remaining allegations of Paragraph 4 as hearsay, and states

that the number of articles in which Flemmi and Bulger were mentioned as stated in Murrane's Affidavit ¶ 16, are greatly exaggerated.

5. For the purposes of the Cross-Motion for Summary Judgment, Plaintiff admits that Flemmi and Bulger are notorious Boston crime figures.

6. For the purposes of the Cross-Motion for Summary Judgment, Plaintiff admits that Flemmi and Bulger are notorious Boston crime figures.

7. For the purposes of the Cross-Motion for Summary Judgment, Plaintiff admits that Flemmi and Bulger are notorious Boston crime figures.

8. For the purposes of the Cross-Motion for Summary Judgment, Plaintiff admits the allegations of Paragraph 8.

9. For the purposes of the Cross-Motion for Summary Judgment, Plaintiff admits the allegations of Paragraph 9.

10. Plaintiff denies this allegation and states that he used his skill and experience to get the two photographs of Flemmi. He had to decide between available light photography or flash photography. He had to decide on the location where he anticipated Flemmi would be escorted by the police. He had to decide on the composition of the image and what camera and lens combination to use to maximize the probability of getting a usable photograph. Flemmi was a moving target who probably did not want to be photographed and Fitzgerald had only seconds to get clear focused shots while he was walking backwards. [See, Fitzgerald Affidavit filed in opposition to Defendant's Motion for Summary Judgment, ¶ 2.]

11. Plaintiff managed to take only two usable photographs of Flemmi. In one photograph, Flemmi is looking to the right [copy attached to Murrane Affidavit as

2


Exhibit 4].  In the other photograph, Flemmi is looking to the left [copy attached to Murrane Affidavit as Exhibit 10].

12. The Photograph of Flemmi looking to the left [Exhibit 10 to Murrane Affidavit] was first published on January 7, 1995 on the front page of the *Boston Globe*. WBZ-TV Channel 4 later published this image in a newscast in 1998 without Fitzgerald's permission.  The CBS Television Network was licensed to both Flemmi Photographs on *60 Minutes* for limited purposes.  The CBS Network used the Photograph of Flemmi looking to the right [Exhibit 4 to Murrane Affidavit] more times than the license allowed. Both Photographs were the subject of Fitzgerald's claim against WBZ-TV and CBS in Fitzgerald v. CBS Corp., US District Court, District of Massachusetts, Docket Number 98-11510-JLT (the "1998 Action").

In June 2004, the Photograph of Flemmi looking to the right was used by WBZ-TV without Fitzgerald's permission, and it is the subject of the present Action.  [See, Complaint, and Epstein Affidavit ¶ 7, submitted on October 4, 2006.]

12. Plaintiff admits that Martorano worked for Flemmi and Bulger.

13. Plaintiff admits that Martorano worked for Flemmi and Bulger.

14. Plaintiff admits that Martorano worked for Flemmi and Bulger.

15. Plaintiff admits that Martorano worked for Flemmi and Bulger.

16. Plaintiff admits that Martorano worked for Flemmi and Bulger.

17. For the purposes of the Cross-Motion for Summary Judgment, Plaintiff admits the allegations of Paragraph 17.

18. Plaintiff has no knowledge of any of the allegations in Paragraph 18 and denies all such allegations.

19. Plaintiff has no knowledge of any of the allegations in Paragraph 19 and denies all such allegations.

20. Plaintiff has no knowledge of any of the allegations in Paragraph 20 and denies all such allegations.

21. Plaintiff has no knowledge of any of the allegations in Paragraph 21 and denies all such allegations.

22. Plaintiff agrees with the statement in Paragraph 22.

23. Plaintiff agrees with the statement in Paragraph 23.

24. Plaintiff agrees with the statement in Paragraph 24.

25. Plaintiff states that the Photograph was rebroadcast on Channel 4 during the 5 am and 6 am newscasts. [Epstein Affidavit.]

26. Plaintiff has no knowledge of any of the allegations in Paragraph 26.

27. Plaintiff has no knowledge of any of the allegations in Paragraph 27 and denies all such allegations.

28. Plaintiff has no knowledge of any of the allegations in Paragraph 28 and denies all such allegations.

29. Plaintiff admits and denies the allegations of Paragraph 29 as follows: CBS claims that WBZ-TV and WSBK-TV operate as "sister stations", and that they share certain broadcast equipment and departments. Fitzgerald maintains that the two stations are treated by CBS as separate stations and that they are perceived as separate entities, with each having their own separate existence and identity. For example, Jennifer Street who is now the news director of WBZ-TV, and who was the spokesperson for CBS in a Rule 30(b)(6) deposition in the 2004 Action, and has been employed by CBS in various

positions within the news department since 1990, testified as to the following differences between the stations:

- that WBZ-TV and WSBK-TV have different promotional writers, some of which are assigned only to WSBK-TV and others assigned only to WBZ-TV. [Street Deposition Transcript. p. 127.]

- that at various times between 2005 and 2006, different on air personalities appeared exclusively on WSBK-TV while others appeared exclusively on WBZ-TV . [Street p. 128.]

- that it is possible that some studio crew were exclusive to the individual stations. [Street p. 130.]

- that the 10 o'clock news on WSBK-TV and the 11 o'clock news on WBZ-TV were both broadcast from the same studio, but the stations completely changed their sets and had totally different anchors for each news broadcast. [Street p. 130-1.]

- that both stations have completely different sales and advertising staff. [Street p. 132.]

- that both stations have different advertising rates. [Street p. 140.]

- that revenue for both stations are maintained separately. [Street p. 132.]

- that both stations are separately licensed by Federal Communication Commission. [Street p. 132.]

- that both stations have separate websites. [Street p. 135.]

- that most programming is different with the exception of *Red Sox This Week* which airs on both stations but at different times <u>and</u> with different commercials. [Street p. 138.]

Ms. Street did testify that both stations use the same news writers, crew, and film library, but these behind the scenes workers and assets do not impact the public perception that the stations, which started life as independent entities[1], are very much separate and independent from each other. [Street p. 129-130.]

30. Plaintiff denies this allegation and states that at various times between 2004 and 2006, the anchor reporters and the backdrops between Channel 4 and Channel 38 did change completely. [Street Dep. p. 131.]

31. See response to paragraph 29 which is incorporated herein.

32. Plaintiff admits that both Photographs were published prior to the newscast at issue.

33. For the purposes of the Cross-Motion for Summary Judgment, Plaintiff admits the allegations of Paragraph 33.

34. The Photographs are related but are quite different. [See Exhibits 4 and 10 to Murrane Affidavit.]

35. For the purposes of the Cross-Motion for Summary Judgment, Plaintiff admits the allegations of Paragraph 35.

36. For the purposes of the Cross-Motion for Summary Judgment, Plaintiff admits the allegations of Paragraph 36.

37. For the purposes of the Cross-Motion for Summary Judgment, Plaintiff admits the allegations of Paragraph 37.

---

[1] For a history of WSBK-TV, Channel 38, see, www.answers.com/topic/wsbk-tv.

      38.    For the purposes of the Cross-Motion for Summary Judgment, Plaintiff admits the allegations of Paragraph 38.

      39.    The agreement speaks for itself.

      40.    Plaintiff denies the allegations of Paragraph 40 and answers as follows: CBS fails to recognize that litigation is not necessarily more lucrative than licensing the photograph. Litigation is expensive, time-consuming, stressful and risky. Fitzgerald had to meet with counsel, review documents, answer interrogatories, assemble documents, write affidavits, attend depositions, read transcripts, pay legal fees and incur costs, all with the risk that there may be no recovery or that the recovery would be less than the amount of Fitzgerald's attorney fees and costs. Plaintiff has earned more in settlements than he has earned in negotiated licensing fees, but his settlements were not without risk and inconvenience. [Fitz. Aff. (10/4/06)¶ 5.]

      41.    Plaintiff admits the allegation of Paragraph 41.

      42.    Plaintiff has earned more in settlements than he has earned in negotiated licensing fees, but his settlements were not without risk and inconvenience. [Fitz. Aff. (10/4/06) ¶ 5.]

      43.    Plaintiff denies that allegations in Paragraph 43 and states that he earned $1,300 in licensing fees from CBS for a package of uses. [See, Affidavit of Fitzgerald dated September 1, 2006 and exhibit thereto.]

      44.    Plaintiff states that this is only part of the value of the Flemmi Photograph. To the best of Fitzgerald's knowledge and belief, the Flemmi Photographs are the best relatively recent images of Flemmi that are available for publication and therefore, they are

rare and valuable.  Flemmi's official arrest photographs have apparently never been released by the authorities.  [Fitz. Affidavit of September 1, 2006,  ¶ 6.]

45.   Plaintiff states that this is only part of the value of the Flemmi Photograph.  To the best of Fitzgerald's knowledge and belief, the Flemmi Photographs are the best relatively recent images of Flemmi that are available for publication and therefore, they are rare and valuable.  Flemmi's official arrest photographs have apparently never been released by the authorities.  [Fitz. Affidavit of September 1, 2006,  ¶ 6.]

46.   Fitzgerald brought suit against WBZ-TV and CBS in 1998 for copyright infringement of both Flemmi Photographs.  The Photograph of Flemmi looking to the left [Exhibit 10 to Murrane Affidavit] was first published on January 7, 1995 on the front page of the *Boston Globe*.  WBZ-TV Channel 4 later published this image in a newscast in 1998 without Fitzgerald's permission.  The CBS Television Network was licensed to both Flemmi Photographs on *60 Minutes* for limited purposes.  The CBS Network used the Photograph of Flemmi looking to the right [Exhibit 4 to Murrane Affidavit] more times than the license allowed.  Both Photographs were the subject of Fitzgerald's claim against WBZ-TV and CBS in  <u>Fitzgerald v. CBS Corp.</u>, US District Court, District of Massachusetts, Docket Number 98-11510-JLT (the "1998 Action").

In June 2004, the Photograph of Flemmi looking to the right was used by WBZ-TV without Fitzgerald's permission, and it is the subject of the present Action.  [See, Complaint, and Epstein Affidavit ¶ 7, submitted on October 4, 2006.]

47.   Plaintiff admits that Defendant raised a routine fair use defense.

48.   Plaintiff admits that the parties signed a Mutual Settlement and Release that was expressly made in consideration of the covenants and warranties stated in the

agreement.  In the agreement, CBS represented and warranted that it was "unaware of any uses by the Defendant of the photographs at issue in the Lawsuit other than those that have been disclosed in the pleadings filed and discovery conducted in the Lawsuit." [Paragraph 6 of Exhibit 13 to the Murrane Affidavit.]   Defendant did not disclose in the pleadings or discovery that it made an unauthorized copy of the *60 Minutes* program broadcast in 1998 and that a so-called "pitch reel" was made from this copy.  Plaintiff's Flemmi Photographs appeared in both the *60 Minutes* tape and the pitch reel.  [Epstein Affidavit ¶ 8.]

      49, 50 and 51. CBS claims that it took preventative measures to avoid a future lawsuit over the Flemmi Photograph, but Fitzgerald maintains that its measures were ineffective.  First, CBS did not even follow its own fair use guidelines for using photographs.  Street admitted this in her deposition.  [Street Dep. p. 149.]  Second, CBS claims that after Fitzgerald's 1998 Action, it instructed its film librarian to review all archived tapes in the station's library and remove all images of the photograph.  Eric Cox was the film librarian at WBZ-TV in 1998 and he is still the film librarian at the station.  CBS admits that it made "routine" copies of all *60 Minutes* broadcasts including the one with the Flemmi Photographs.  [CBS Answers to Ints. # 3, Murrane Affidavit Exhibit 2.]  If Eric Cox purged the Flemmi Photographs from the *60 Minutes* tape, how did the images end up on the so-called "pitch reel" that was made from the *60 Minutes* tape?  If an unidentified film editor found the Photograph in June 2004, why didn't Mr. Cox find it in 1998 or 1999?  Since CBS refused to let Fitzgerald depose Mr. Cox, one can only speculate that at worst, CBS never told Eric Cox to purge the film library of Mr. Fitzgerald's photographs, or that Mr. Cox never bothered to purge the Photographs and

9

no one followed up with him, or that his efforts were simply negligent. Of course, if the photographs had been purged from the 60 Minutes broadcast, there would not have been a pitch reel, and CBS would not have had the Flemmi Photograph in its files, and would not have been able to use it, and this lawsuit would not have been filed. Street admitted this in her deposition. [Street Dep. p. 104-6.]

CBS also claims that it sent an internal email message to all staff instructing them to search their individual files and destroy all copies of the Photograph. However, WBZ-TV was unable to find a copy of the email message. [Street Dep. p. 38.] Regardless, assuming that WBZ did send an email to all employees in or around 1998, there is no suggestion that anyone followed up this email with either a reminder or an inspection. Moreover, there is no suggestion that WBZ-TV did in 1998 what CBS management did in 2004, that is, post a copy of the Flemmi Photograph in numerous places "throughout the station, including the library, the news room, every editing bay and the photographer's area instructing staff not to use the Photograph." The notation on the Photograph boldly said, "Do Not Ever use this Photo of Steve Flemmi on WBZ or UPN Air." [See, Epstein Aff. (10/4/06), Exhibit C.] In fact, the Flemmi Photograph was posted in the news department from June 2004 through at least the time of Street's deposition on July 19, 2006. [Street dep. p. 125, and CBS Ints. #9] Both Eric Cox and now News Director, Jennifer Street were employed in the news department by WBZ-TV at all times from 1998 to date. They should have recognized Fitzgerald's Photograph. CBS's efforts to prevent the repeated use of the Flemmi Photographs from 1998 to 2004 were highly ineffective. For example, even when the pitch reel was purged in 2004, only four of the five uses of the Flemmi Photographs were removed. No wonder CBS admits

that "[d]espite these efforts [made after June 2004], a copy of the Photograph inadvertently remained in the possession of CBS 4." [CBS Memo p. 9.] CBS's "inadvertence" amounts to negligence.

The lack of communication about the Flemmi Photograph between CBS Corporation in New York and WBZ-TV is further evidence of Defendant's willful misbehavior. As has been shown, the Stock Photograph Contract signed by both Fitzgerald and the CBS Network says that "[t]his contract does not grant CBS <u>or its affiliates</u> the permission to republish these photos on other television programs or in other media. <u>Additional uses</u> and re-broadcasts . . . would require further negotiation." [See Exhibit C to Plaintiff's Motion for Partial Summary Judgment; emphasis supplied.] WBZ-TV admitted that if it was given a copy of this Contract on or about May 10, 1998 (which was just before the *60 Minutes* broadcast), it would "probably not" have made a recording of the broadcast with the Flemmi Photographs. [Street Dep. p. 105.] WBZ-TV never disclosed to the CBS Network that it had a copy of the *60 Minutes* broadcast, or that it made the pitch reel from this broadcast when the Mutual Settlement and Release was signed on October 23, 1999. [Street Dep. p. 118.]

52.     As an affiliate of CBS, WBZ-TV was not licensed to make a copy of the *60 Minutes* broadcast under the terms of the Stock Photography Agreement of March 16, 1998. [See, Exhibit 11 of Murrane Affidavit.]

53.     Since WBZ-TV was not licensed to make a copy of the *60 Minutes* broadcast under the terms of the Stock Photography Agreement of March 16, 1998, it assuredly was not licensed to make the so-called pitch reel. [See, Exhibit 11 of Murrane Affidavit.]

54. Plaintiff has no knowledge as to how, when or by whom the pitch reel was made, but it assuredly was made by an agent, servant or employee of WBZ-TV or CBS.

55. Plaintiff denies the allegations of this paragraph and says that Street never identified when the Photographs were purged. In fact, WBZ-TV was negligent in not purging all of the Flemmi Photographs.

56. Plaintiff has no knowledge of any of the allegations in Paragraph 56 and denies all such allegations.

57. Plaintiff has no knowledge of any of the allegations in Paragraph 57 and denies all such allegations.

58. Plaintiff has no knowledge of any of the allegations in Paragraph 58 and denies all such allegations.

59. Magistrate Collings' report speaks for itself.

60. In the interests of judicial economy, Plaintiff believes that all of the pending motions in this action as well as in Fitzgerald v. CBS Corp., CA No. 06-11302-NG should be heard and resolved by this Court at the same time.

61. The pleadings speak for themselves.

|  |  |
|---|---|
|  | CHRISTOPHER FITZGERALD,<br>By his attorney, |
|  | /s/ Andrew D. Epstein |
| October 4, 2006 | Andrew D. Epstein, Esquire<br>BBO #155-140<br>Barker, Epstein & Loscocco<br>10 Winthrop Square<br>Boston, MA  02110<br>(617) 482-4900<br>FAX: (617) 426-5251 |