UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

_____
                                    )
CHRISTOPHER FITZGERALD,             )
                                    )
                   Plaintiff,       )
                                    )   CIVIL ACTION NO.
v.                                  )
                                    )   04-CV-12138-NG
CBS BROADCASTING INC.,              )
                                    )
                   Defendant.       )
_____ )

**REPLY MEMORANDUM OF CBS BROADCASTING INC. IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**
**(Leave to File Granted on October 24, 2006)**

Defendant CBS Corp.[1] ("CBS") submits this memorandum in reply to plaintiff's opposition to CBS's motion for summary judgment. As shown below, several admissions made by the plaintiff in his opposition papers confirm that a finding of fair use is warranted as a matter of law in this case. More specifically, each of the four statutory factors enumerated in § 107 of the Copyright Act favors a fair use finding. In addition, the "non-statutory" factors cited by the plaintiff are unsupported by law or fact and are irrelevant to the application of the fair use doctrine. Accordingly, and for the reasons set forth in CBS's Memorandum of Law in Support of its Motion for Summary Judgment ("CBS's Memorandum"), summary judgment should enter dismissing the plaintiff's complaint.[2]

---

[1] CBS Corp., *not* CBS Broadcasting Inc., was the owner of CBS 4 (also known as WBZ-TV) and WSBK-TV (previously known (and sometimes referred to by the parties) as UPN 38) and accordingly is the proper defendant in this action. Fitzgerald filed an assented to motion to substitute CBS Corp. as the named defendant, which motion is currently pending.

[2] Local Rule 56.1 provides that the statement of material undisputed facts served by a party moving for summary judgment will be deemed admitted "unless controverted by the statement required to be served by opposing parties." Fitzgerald's Response to CBS's Statement of Undisputed Material Facts ignores this requirement, failing in over 20

1

## ARGUMENT

### A. Fitzgerald's Admissions Confirm that the Purpose and Character of CBS's Use Favor a Fair Use Finding.

Plaintiff's opposition papers state that "Fitzgerald agrees" with CBS "that the Flemmi Photograph was 'used to enhance a news report.'"  Fitzgerald Opposition Brief ("Fitzgerald Opp.") at 7.  Indeed, in Fitzgerald's words: "Clearly the Photograph was used to enhance the news report; why else would it have been used by Channel 4?"  Id.  This concession that CBS's use was for one of the specified statutory purposes creates "a 'strong presumption' that factor one favors the defendant."  Arica Institute, Inc. v. Palmer, 970 F.2d 1067, 1077 (2d Cir. 1992).  See also Rubin v. Brooks/Cole Publishing Co., 836 F. Supp. 909, 917 (D. Mass. 1993); Wright v. Warner Books, Inc., 953 F.2d 731, 736-37 (2d Cir. 1991).

Fitzgerald also admits that CBS used the Photograph in a different manner and for a different purpose than the original image.  These admissions confirm that CBS's use of the Photograph was "transformative," *i.e.*, the newscasts "add[ed] something new, with a further purpose or different character, altering the first with new expression, meaning, or message."  Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 579 (1994), citing, Pierre N. Leval, Toward a Fair Use Standard, 103 Harv. L.Rev. 1105, 1111 (1990).

For example, Fitzgerald acknowledges that the "'fact' shown in the [original] image was Flemmi's arrest in 1995."  Fitzgerald Opp. at 6.  He describes the original uncropped Photograph as "captur[ing] a moment in time after Flemmi was arrested in 1995, when he was being escorted to prison by police officers" the latter of whom are "clearly visible in Fitzgerald's full frame photograph."  Id.

In contrast to the Photograph's original purpose and character, Fitzgerald concedes that the Photograph was used by CBS "'because of its relevance to [the]

---

instances to offer any record cite needed to support his qualified admissions or partial denials.  Nevertheless, the admissions that he does make -- and the uncontroverted record -- establish that summary judgment is warranted with respect to CBS's fair use defense.

2

breaking news event in 2004 [of John Martarono's sentencing], *not to illustrate Flemmi's arrest in 1995.*'" Fitzgerald Opp. at 7 (emphasis added). He admits that CBS cropped the Photograph to exclude the police officers escorting Flemmi to prison and to show only Flemmi's face, and acknowledges that CBS did so because the Photograph was not used to illustrate Flemmi's arrest. Fitzgerald Opp. at 4, 6. In fact, Fitzgerald goes even further by admitting that had CBS *not* cropped the Photograph, the image "would have been just an outdated arrest photograph that was nine (9) years old by the time of the June 2004 newscasts…." Id. His concession that it was only by excluding the police officers from the Photograph that CBS transformed an "outdated" picture into what he self-servingly describes as a "rare image" further establishes the transformative nature of CBS's use. See Fitzgerald Opp. at 6. See also CBS's Memorandum at 12-17.

In sum, because Fitzgerald concedes that the Photograph was used for an entirely different, informative purpose than its original use in 1995, factor one of the statutory fair use factors favors CBS.[3]

### B. The Nature of the Copyrighted Work Favors a Finding of Fair Use.

Fitzgerald cannot escape the uncontroverted fact that the Photograph was published several times prior to CBS's use in 2004, a factor that favors a finding of fair use. See Harper & Row, 471 U.S. at 563; Kelly v. Arriba Soft. Corp., 336 F.3d 811, 820 (9th Cir. 2003). He attempts to confuse the issue by asserting that in 1995 the Globe published the other photograph of Flemmi taken by Fitzgerald showing Flemmi looking in a different direction. As he admits in his Response to CBS's Statement of Undisputed Material Facts, however, the very Photograph at issue in this case (*i.e.*, the image of Flemmi "looking to

---

[3] Although Fitzgerald concedes that the Photograph was used because of its relevance to the breaking news story of John Martarono's sentencing, Fitzgerald Opp. at 7, he elsewhere attempts to argue that he has the right to decide whether the use of the Photograph was newsworthy. Fitzgerald Opp. at 5, 6, 12. As the Supreme Court has stated, however, "'[c]ourts should be chary of deciding what is and what is not news.'" Harper & Row Publishers, Inc. v. Nation Enter., 471 U.S. 539, 561 (1985) (citation omitted). Fitzgerald has no greater claim to such a right.

the right") was published several times before CBS's use in 2004, including uses by the *Boston Globe*, *The New York Times*, the *Boston Herald*, the *American Lawyer* magazine, and on the national television program *America's Most Wanted*. SOF, ¶¶ 32, 35-37 (admitted in Fitzgerald's Response to CBS's Statement of Material Undisputed Facts); see also Plaintiff's Affidavit in Support of His Motion for Partial Summary Judgment, ¶ 7 ("The Flemmi Photographs have been used and published on numerous occasions both with my permission and without my permission."); Affidavit of Jonathan M. Albano in Response to Plaintiff's Statement of Undisputed Material Facts in Support of His Motion for Summary Judgment ("Albano Aff.") at ¶¶ 5-11, and Exhibits C - I attached thereto.

Fitzgerald also cannot seriously dispute that the Photograph is primarily factual in nature, another factor favoring a finding of fair use. Nuñez v. Caribbean Int'l News Corp., 235 F.3d 18, 23 (1st Cir. 2000).[4] As Fitzgerald himself admits, the "'fact' shown in the [original] image was Flemmi's arrest in 1995." Fitzgerald Opp. at 6. His assertion that the Photograph was primarily creative because he had "control over [its] timing, location, lighting and composition" is flatly contradicted by the record. Flemmi Opp. at 9. As Fitzgerald has testified, it was the *Boston Globe* that sent him to the Framingham state police barracks to attempt to obtain a photograph of Flemmi, based upon a tip the newspaper -- not Fitzgerald -- had received regarding Flemmi's whereabouts. SOF at ¶¶ 8-9 (admitted in Fitzgerald's Response); Deposition of Christopher Fitzgerald dated July 20, 2006 ("Fitzgerald Dep.") at 79:3-80:23. The "timing" and the "location" of the Photograph were dictated by law enforcement officials who had Flemmi in custody. Fitzgerald had no say in those matters, let alone any "control." In addition, since the

---

[4] Perhaps recognizing the futility of any such argument, Fitzgerald devotes significant efforts to arguing that *CBS's* use of the Photograph was not factual, a curious argument since (a) the newscast accurately portrayed the Photograph as a picture of Flemmi; and (b) the relevant fair use factor is whether *the work* is primarily factual or creative, not the allegedly offending use. Nuñez, 235 F.3d at 23.

4

Photograph was taken outdoors while Flemmi was in public view, SOF at ¶¶ 8-9, the lighting and weather conditions also were outside of Fitzgerald's control.

To suggest that a photograph taken under these circumstances is primarily creative rather than factual flies in the face of common sense and precedent. See Nuñez, 235 F.3d at 20 (photographs of beauty contestant for a modeling portfolio "were not artistic representations designed primarily to express [the photographer's] ideas, emotions, or feelings"). Compare Burrow-Giles Lithographic Co. v. Sarony, 111 U.S. 53, 60 (1884) (photograph of Oscar Wilde was entitled to copyright protection because it was made "entirely from [the photographer's] own original mental conception, to which he gave visible form by posing the said Oscar Wilde in front of the camera, selecting and arranging the costume, draperies, and other various accessories in said photograph, arranging the subject so as to present graceful outlines, arranging and disposing the light and shade, suggesting and evoking the desired expression, and from such disposition, arrangement, or representation, made entirely by plaintiff, he produced the picture in suit.") (internal quotations omitted). In short, the previously published, primarily factual nature of the work favors a finding of fair use.[5]

### C.    The Lack of Market Harm Favors a Finding of Fair Use.[6]

As the Supreme Court has stated, "[m]arket harm is a matter of degree, and the importance of this factor will vary, not only with the amount of harm, but also with the

---

[5] Whether the Photograph lacks sufficient creativity to even qualify for copyright protection is not an issue the Court must rule on to grant summary judgment to CBS (although it is an element of plaintiff's case and therefore a prerequisite to recovery on his part). See Oriental Art Printing, Inc. v. Goldstar Printing Corp., 175 F. Supp.2d 542, 546-48 (S.D.N.Y. 2001) (photographs of Chinese food dishes were not sufficiently creative to be protected by copyright). In all events, even assuming that the modest amount of creativity required to trigger copyright analysis is present in this case, there is no doubt that the Photograph is primarily factual in nature, a factor that favors fair use. Nuñez, 235 F.3d at 23.

[6] Fitzgerald totally failed to address the case law cited by CBS establishing that the amount and substantiality of the use of the cropped Photograph favors fair use. See CBS's Memorandum of Law in Support of Motion for Summary Judgment at 19-20. This Reply therefore does not address that factor of the fair use analysis. See generally Nuñez 235 F.3d at 24; Bill Graham Archives v. Dorling Kindersley Ltd., 448 F.3d 605, 613 (2d Cir. 2006).

relative strength of the showing on the other factors." Campbell, 510 U.S. at 590 n.21. Moreover, "[n]o 'presumption' or inference of market harm … is applicable to a case involving something beyond mere duplication for commercial purposes." Id. at 591.

Fitzgerald's opposition papers contain several admissions rebutting his claim that CBS's use had a competitive impact on the market value of the Photograph. At the outset, Fitzgerald concedes that "there is no market for 8" x 10" glossy photographs of Stephen Flemmi." Fitzgerald Opp. at 11. He admits that, unless a user alters the Photograph, it is "just an outdated arrest photograph that was nine (9) years old by the time of the June 2004 newscasts…." Id. at 6. He also claims that the market value of the Photograph depends upon the "the interest in the public at that time and date of the story," SOF at ¶ 44; Fitzgerald Dep. at 108:18-108:24; that the market "heats up whenever Stephen Flemmi and his partner in crime, Whitey Bulger[,] come up in the news," and that as "more news unfolds about Flemmi and Bulger, Fitzgerald will have continuing opportunities to exploit the market" for the Photograph. SOF at ¶ 45; Fitzgerald Brief at 12-13.

Strikingly absent from Fitzgerald's submissions is any evidence that CBS's two-second use of the Photograph caused him to lose any past, present or future opportunity to market the Photograph to any third parties. Indeed, the only loss he alleges is that he did not get paid for CBS's use, a fact present in *every* fair use case. See Leibovitz v. Paramount Pictures Corp., 137 F.3d 109, 117 (2d Cir. 1998) (a copyright plaintiff "is not entitled to a licensing fee for a [use] that otherwise qualifies for the fair use defense."); see also CBS's Memorandum at 20-23.

In short, because CBS's brief, transformative use of the cropped Photograph did not compete with or substitute for the original Photograph, the fourth factor favors the defendants as a matter of law.

### D. Fitzgerald's Alleged "Non-Statutory" Factors Are Irrelevant to the Fair Use Inquiry.

Faced with the inevitable conclusion that the four statutory factors favor a finding of fair use based on the specific facts of this case, Fitzgerald devotes much of his opposition papers to so-called "non-statutory" factors, each of which proceed on the erroneous assumption (rather than trying to prove) that CBS's use of the Photograph was not a fair use.

For example, Fitzgerald perseverates on the copyright claim he brought in 1998 against CBS, alleging that the prior suit -- settled in 1999 without any admissions of liability -- means that CBS knew "Fitzgerald was not going to permit anyone to use [the Photograph] without his permission." This position (somewhat grandiose given the fair use doctrine) is simply an incorrect statement of law. Fitzgerald Opp. at 2. As the Supreme Court has held, "being denied permission to use a work does not weigh against a finding of fair use." Campbell, 510 U.S. at 585.

Fitzgerald also contends that CBS breached the warranties and representations of the parties' 1999 settlement agreement by failing to disclose to Fitzgerald that it had an archive copy of the 1998 *60 Minutes* broadcast that made use of the Photograph. To support that claim, Fitzgerald has stated, under oath, that if he had known that CBS had copies of the *60 Minutes program*, he would have insisted that the tapes be destroyed as part of the settlement he signed in November 1999. See Plaintiff's Affidavit in Support of his Motion for Partial Summary Judgment, ¶ 17. See also Fitzgerald Opp. at 17-18.

Unfortunately for Fitzgerald, in February 1999, months before he signed the settlement agreement, his lawyer filed an affidavit in the 1998 action verifying that "[a]s part of the automatic disclosure in [the 1998] action, [he] received from the defendant two (2) video tapes, *one of which included the broadcast of the 60 Minutes television program using the plaintiff's photograph of Stephen Flemmi*." February 24, 1999 Affidavit of Andrew D. Epstein, ¶ 1 (filed in Fitzgerald v. CBS Corporation, Civil Action No. 98-cv-

7

11510-JLT) (copy attached hereto as Exhibit A) (emphasis added).  According to Fitzgerald's counsel, he "reviewed the tape on the evening of February 9, 1999." Id., ¶ 2.  Thus, despite the statements made under oath by Fitzgerald in this case, he knew *before* signing the settlement agreement in November 1999 that CBS had a videotape copy of the *60 Minutes* broadcast *because it had been produced to him in discovery*.

Moreover, the very provision of the settlement agreement cited by Fitzgerald provided that each party was unaware of any "uses" by CBS of the Photograph "*other than* those that have been disclosed in the pleadings filed and discovery conducted in the Lawsuit." See Exhibit 13 to Murrane Affidavit, § 5 (emphasis added).  As correspondence preceding the settlement establishes, the provision was sought by Fitzgerald because his settlement demand was based on the number of times the Photograph had been broadcast by CBS (*not* on the number of copies CBS had made). See Exhibits A-B of Albano Aff.

In sum, despite being provided with copies of videotapes containing the Photograph, Fitzgerald chose not to request that the tapes be destroyed as a condition to the settlement, but instead released CBS and its affiliates of all claims that he could have brought in the action. See Exhibit 13 to Murrane Affidavit, § 3.  Even assuming that CBS did not have the right to make an archive copy of one of its own news shows (a proposition for which Fitzgerald has yet to cite any authority), any such claim was knowingly released by Fitzgerald in October 1999 and, in all events, is wholly irrelevant to whether CBS made a fair use of the Photograph in a 2004 breaking news report. See also CBS's Memorandum at 25-26.[7]

---

[7] Fitzgerald's reliance on the 1998 Stock Photograph Contract with CBS is also misplaced.  Contrary to Fitzgerald's suggestion, nothing in that Contract waived or altered in any way CBS's right to assert the fair use defense in this case. See Exhibit 11 to Affidavit of Mary B. Murrane in Support of CBS's Motion for Summary Judgment. See also Graham, 448 F.3d at 615 ("a publisher's willingness to pay license fees for reproduction of images does not establish that the publisher may not, in the alternative, make fair use of those images").

8

Fitzgerald also mischaracterizes CBS as having admitted that it was a "mistake" to use the Photograph and as having failed to assert a good faith belief in the fair use defense.[8] See Fitzgerald Opp. at 2 n.1, 18. Far from an admission of liability, the deposition testimony of Ms. Street on which Fitzgerald relies makes it perfectly clear that the "mistake" was "not because [using the Photograph] was not fair use but because [CBS] had gone through the litigation with Mr. Fitzgerald in 1998" and had decided to try to avoid future litigation. Street Dep. at 105:8-106:4; 121:2-121:12. As Fitzgerald admits elsewhere in his opposition papers, "[l]itigation is expensive, time consuming and risky." Fitzgerald Opp. at 12. CBS's desire to avoid another round of litigation with Fitzgerald is hardly an admission of liability.

Fitzgerald's complaint that CBS took "totally inadequate and ineffective" measures to ensure against re-using the Photograph is but another example of him assuming the fact he is required to prove. Fitzgerald Opp. at 2, 13-14. If the use was a fair use, neither CBS's desire to avoid a second round of litigation, nor its failure to prevent that litigation from occurring, is evidence of a copyright violation.

Fitzgerald also makes the incredible claim that *even if the use of his Photograph was a fair use*, "WBZ-TV would still have to follow its own CBS News Standards" in deciding whether to use the Photograph. Fitzgerald Opp. at 10. Fitzgerald cannot seriously maintain that CBS's News Standards trump the body of case law interpreting the Copyright Act's fair use provision. His statement that compliance with the Standards "would have ensured that neither the network nor any of the CBS stations would ever use the Flemmi Photograph again without [Fitzgerald's] permission" is flatly incorrect: the Standards simply provide that employees should consult with their superiors before using copyrighted material. See Fitzgerald Opp. at 17 and Exhibit A. The undisputed record in this case is that the Photograph was not discovered until some time between the 10:00

---

[8] As Fitzgerald well knows, CBS has asserted since 1998 that the use of the Photograph in newscasts is a fair use. SOF at ¶ 47 and Fitzgerald's Response.

p.m. and 11:00 p.m. newscasts on WSBK-TV and WBZ-TV, respectively. SOF at ¶ ¶ 19-21. That station personnel did not consult with senior management before using the Photograph on the 11:00 p.m. newscast sheds absolutely no light on whether the use was a fair use under § 107 of the Copyright Act (any more than evidence that station personnel consulted senior management would bolster the fair use defense).

Finally, Fitzgerald makes the disingenuous claim that CBS is attempting to keep the circumstances in which CBS archived a copy of the Photograph a "mystery." Fitzgerald Opp. at 13. Fitzgerald is seeking this discovery to pursue his frivolous claim that keeping an archived copy of the 1998 *60 Minutes* broadcast (but not airing it) either violated the Copyright Act or was a breach of the settlement agreement. Because there is no dispute that the Photograph used in the newscast came from a copy of the 1998 *60 Minutes* broadcast -- and no dispute that Fitzgerald knew that CBS had videotape copies of the Photograph when he released CBS of all existing claims in 1999 -- there is absolutely no "mystery" concerning the Photograph's origins, nor is the issue conceivably relevant to whether CBS made a fair use of the Photograph in the January 2004 newscasts.

## CONCLUSION

For the foregoing reasons, and for those set forth in its memorandum of law in support of its motion for summary judgment, CBS respectfully requests that the plaintiff's complaint be dismissed.

                                  **CBS BROADCASTING INC.,**

                                  By its attorneys,

                                  /s/ Mary B. Murrane
                                  Jonathan M. Albano, BBO#013850
                                  Mary B. Murrane, BBO# 644448
                                  **BINGHAM MCCUTCHEN LLP**
                                  150 Federal Street
                                  Boston, MA  02110
Dated:  October 25, 2006               (617) 951-8000

LITDOCS/655520.1

**Certificate of Service**

I hereby certify that this document, which was filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants by First Class U.S. Mail on October 25, 2006.

                                              /s/ Mary B. Murrane
                                              Mary B. Murrane

LITDOCS/655520.1