UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CHRISTOPHER FITZGERALD, ) | |
| ) | |
| Plaintiff ) | |
| ) | CIVIL ACTION NO. |
| v. ) | |
| ) | No. 04-12138-NG |
| CBS BROADCASTING, INC., ) | |
| ) | |
| Defendant ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEY'S FEES AND PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES AND COSTS UNDER 28 U.S.C. §1927**

**I.  Plaintiff opposes Defendant's Motion for Attorney's Fees.**

This is an action for copyright infringement against Defendant for the unauthorized use of Plaintiff's copyrighted photograph of the notorious Mafia hit man, Stephen ("the Rifleman") Flemmi. Defendant used the rare Flemmi Photograph on numerous television news broadcasts over a two day period on two different stations that it owns in the Boston market, namely Channel 4 (WBZ-TV) and Channel 38 (WSBK-TV). Plaintiff instituted two actions for copyright infringement against Defendant, one for the infringement of the Flemmi Photograph by Channel 4 (Fitzgerald v. CBS Broadcasting, Inc., C.A. No. 04cv12138-NG ("Fitzgerald I")), and the other for the infringement of the Flemmi Photograph by Channel 38 (Fitzgerald v. CBS Broadcasting, Inc., C.A. No. 06cv11302-NG ("Fitzgerald II")). Plaintiff was seeking statutory damages against Defendant in both actions.

On June 22, 2007, this Court issued an Order of Consolidation and Dismissal **IN PART** in Fitzgerald II (Document 13, emphasis in original).  The Court dismissed Plaintiff's claim for an award of multiple statutory damages against Channel 38, because Channel 4 and Channel 38 are owned by a single corporation, and thus Plaintiff was entitled to only one award of Statutory Damages.  [citing, Venegas-Hernandez v. Sonolux Records, 370 F. 3d 183, 194 (1st Cir. 2004).]  The remaining claims in Fitzgerald II for actual damages and profit damages under 17 U.S.C 504(b) were consolidated with the claims in Fitzgerald I.

Defendant is now seeking an award of attorney's fees under §505 of the Copyright Act for its partial victory in Fitzgerald II.  Plaintiff, Christopher Fitzgerald, opposes Defendants motion for attorney's fees on the basis that the motion is premature and vexatious and the fees requested are excessive.

### II. Defendant can move for attorney's fees under Rule 54(d)(2) only after final judgment.

Under Fed.R.Civ.P 54(d)(2)(B), a motion for attorney's fee can be filed only after entry of judgment.  This court issued an Order of Consolidation and Dismissal in Fitzgerald II (Document 13) but the court has not issued a separate document setting forth the judgment.[1]  Furthermore, a grant of partial summary judgment is interlocutory under the terms of Fed.R.Civ.P 56(c).  As an interlocutory order, Plaintiff can neither appeal this Court's decision in Fitzgerald II, nor can Defendant apply for attorney's fees.  Liberty Mutual Ins. Co. v. Wetzel, 424 U.S. 737, 96 S.Ct. 1202 (1976) (where other relief remains to be resolved after partial relief for summary judgment, the judgment is

---

[1] Fed.R.Civ.P. 58(a)(1) provides that " [e]very judgment . . . must be set forth on a separate document. . . ."  There are five exceptions in this Rule[1] but none of them apply to actions on Motions for Summary Judgment, especially those that are only partially dispositive of an action.

2

never considered to be final within the meaning of 28 U.S.C. §1291.) This Court's dismissal of Plaintiff's claim for Statutory Damages in Fitzgerald II and the Court's consolidation of the remaining claims with Fitzgerald I do not constitute a final judgment under the Federal Rules of Civil Procedure.

A judgment is a decree "finally adjudicating the rights of the parties affected by the judgment. . . ." (Fed.R.Civ.P. 54(a)). For an order to constitute final judgment, there must be "some clear and unequivocal manifestation by the [district] court of its belief that the decision made, so far as the court is concerned, is the end of the case." Goodwin v. United States, 67 F.3d 149, 151 (8th Cir. 1995); see, also, United States v. F. & M. Schaefer Brewing Co., 356 U.S. 227, 232, 78 S.Ct. 674 (1958) (holding that a pronouncement amounts to a final judgment where it "clearly evidences the judge's intention that it shall be his final act in the case").

This Court dismissed Plaintiff's claim for statutory damages in Fitzgerald II, and consolidated the remaining claims for actual damages and profits damages under the Copyright Act with Fitzgerald I. However, the Court did not issue judgment either in part or in full which would have allowed Plaintiff to seek an interlocutory appeal, or permit Defendant to seek attorney's fees under Rule 54(d)(2) as a prevailing party (at least in part) under 17 U.S.C. §505. To do so, the court must make "an express determination that there is no just reason for delay" and direct the entry of judgment as to the dismissed claims or parties. Fed.R.Civ.P. 54(b). Diaz-Reyes v. Fuentes-Ortiz, 471 F.3d 299, 300-1 (1st Cir. 2006); Spiegel v. Trustees of Tufts Coll., 843 F.2d 38, 42-44 (1st Cir. 1988).

3

As a general rule, federal courts of appeals have jurisdiction to review only "final decisions" of lower federal courts under 28 U.S.C. §1291. A final decision ends the litigation on the merits and leaves nothing for the court to do but execute the judgment. See, Diaz-Reyes, supra, 471 F.3d at 300-1 (citing Goodwin v. United States, 67 F.3d 149, 151 (8th Cir. 1995). (Although the "final judgment rule" serves many purposes, one of its central objectives is to ensure that this court does not engage in piecemeal appellate review); Cunningham v. Hamilton County, Ohio, 527 US 198, 203-04 (1999)). If a party seeks to appeal a district court order that does not constitute a "final decision" under §1291, the circuit court must dismiss the case for lack of appellate jurisdiction. U.S. S.E.C. v. Carrillo, 325 F.3d 1268, 1272 (11th Cir. 2003), and Torres v. Puerto Rico, 485 F. 3d 5, 8 (1st Cir. 2007). Defendant's Motion for Attorney's Fees in the matter presently before the Court should be denied in order to prevent the piecemeal request for attorney's fees by either party.

Therefore, this Court's Order of Consolidation and Dismissal is not the equivalent of the entry of judgment and, at best, Defendant's Motion for costs and attorney's fees under Fed. R. Civ. P. 54(d)(2) (B) and 17 U.S.C. §505 is premature and must be denied.

**III.     Plaintiff believes that he has a legitimate claim for separate awards of Statutory Damages under the Copyright Act for the actions of what clearly appear to be separate television entities.**

Clearly, both Channel 4 and Channel 38 are owned by the same Defendant and they both broadcast in the Boston area market. Nevertheless, the stations have different promotional writers, and, at various times between 2004 and 2006, had different on air personalities. In addition, the sets for news broadcasts and the news anchors for the 10 o'clock news on Channel 38 are different from the sets and news anchors for the 11

4

o'clock news on Channel 4. Furthermore, sales and advertising staff for the two stations are different, and the revenue for both stations is maintained separately. Both stations are separately licensed by the Federal Communication Commission and both stations have separate websites. Moreover, most programming is different with the exception of "Red Sox This Week" which airs on both Channel 4 and Channel 38 but at different times <u>and</u> with different commercials. <u>See</u>, <u>Plaintiff's Memorandum (1) In Opposition to Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment; and (2) Memorandum in Support of Plaintiff's Motion for Summary Judgment</u> (Document 7), in <u>Fitzgerald II</u>, pp. 4-5.

CBS Television Stations, a division of CBS Corporation, owns 36 television stations throughout the United States, and it operates the CBS Broadcasting Network. (Information obtained from www.CBS.com[2] on July 16, 2007.) If this Court's decision in <u>Fitzgerald II</u> is correct, then any CBS station in the United States as well as the CBS Television Network, Simon & Shuster, Dreamworks, MTV and other entities owned by CBS or its predecessor, Viacom, Inc.[3], can rebroadcast the Flemmi Photograph at any time without ever risking the imposition of additional awards of Statutory Damages under the Copyright Act. Certainly, if Defendant ever uses the Flemmi Photograph again, Plaintiff can sue for actual damages (which Plaintiff submits would likely consist of relatively modest licensing fees) and profits damages (which would probably be very difficult if not impossible to establish). However, under this Court's ruling, Defendant

---

[2] Website copyrighted under the name CBS Broadcasting, Inc. Also, according to the website, CBS Corporation was part of Viacom, Inc. when this action was started. Either Viacom or CBS also own among other entities including Paramount Pictures Corporation, Simon & Shuster, Dreamworks, MTV, Nickelodeon, Comedy Central "and more than 132 networks around the world."

[3] The exact ownership of the television stations is confusing at best. See, www.CBSCorporation.com and www.Viacom.com. Viacom, Inc. seems to have spun off CBS Broadcasting, Inc. and the CBS Television Network but this is not entirely clear from both websites.

can never again be liable for the imposition of Statutory Damages no matter how outrageous its behavior for any future unauthorized use of Plaintiff's Flemmi Photograph by any of the hundreds of entities owned under the CBS and/or Viacom umbrellas. Since Statutory Damages are intended to act as a deterrent to infringements, the purpose of the Act will clearly not be achieved if this Court's ruling is allowed to stand. (See, Mitchell Intern., Inc. v. Gonzalez, 2006 WL 2226052 at *9 (D. P.R. 2006) (citing R.S.O. Records, Inc. v. Peri, 596 F.Supp. 849, 862 (S.D.N.Y. 1984)). It is for this reason that Plaintiff tried to show the differences between Channel 4 and Channel 38, in an attempt to carve out a narrow exception to the holding in Venegas-Hernandez v. Sonolux Records, supra at 194, that only one award of Statutory Damages can be imposed against any one defendant. Both Channel 4 and Channel 38 are separate assets of Defendant, have separate programming, separate advertisers, separate revenue streams, and hold separate licenses from the FCC. Even though they are technically owned by the same corporation, they act like they are separate entities.

In Albers v. Church of Nazarene, 698 F.2d 852, 857 (7th Cir. 1983), which was cited by this Court, plaintiff is a child who was injured while playing on a church playground as part of its day care program. In Albers, Id. at 857, the court said:

> The plaintiff also objects to the district judge's refusal to submit separate verdict forms for each of the two defendants, as a result of which the jury had to find both negligent in order to give judgment for the plaintiff. The plaintiff speculates that maybe the jury believed that the Church, which owned the premises used by the Day Care Center, including the playground where the accident occurred, had been negligent in failing to prune the tree before the accident but that the Day Care Center had not been negligent in failing to prevent Sarah from hanging her pail on one of the branches; if so, the jury would have had to give judgment for both defendants. But if the jury was confused the fault was the plaintiff's for naming the Day Care Center as an additional defendant. This was both pointless, because the Church is fully liable for the negligence of its staff, whether or not that staff has an organizational title, and improper, because a tort plaintiff may not multiply

6

defendants by breaking up a corporation or other institution into its organizational components when those components have no separate legal identity. If you are injured because of a defect in a Chevrolet, you may sue General Motors and the dealer and individual employees of either but you may not sue the Chevrolet Division of General Motors or the dealer's maintenance department. The reason is practical. An unincorporated division has no separate assets; all its assets are owned by the organization of which it is a part. Unless the organization is liable there can be no levy of execution against the division's assets, and if the organization is not liable none of its assets can be used to satisfy the judgment. A plaintiff therefore has nothing to gain in a practical sense by naming an unincorporated division as an additional defendant and if the result of doing so is to confuse the jury he has no one to blame but himself.

With respect to Defendant CBS, the licenses for Channel 4 and Channel 38 are separate assets and the FCC is free to take away the license to one station but not the other. Accordingly, the two stations have separate legal identities. Therefore, Plaintiff's claim for an award of Statutory Damages under the Copyright Act in Fitzgerald II was reasonable and was made in good faith.

**IV.     The amount of attorney's fees claimed by Defendant is excessive given the relative simplicity of the issues presented.**

With respect to the issue of whether or not a separate award of Statutory Damages is available to Plaintiff against both Channel 4 and Channel 38, Defendant cited six cases on point. Defendant's Memorandum on this issue, excluding the introduction and recitation of facts, consisted of four and one-quarter (4¼) pages of argument out of a total of twenty-two (22) pages of actual argument.[4] Defendant raised the same issue of duplicative awards of Statutory Damages against a single defendant during a mediation session before Magistrate Judge Robert Collings on March 8, 2006. (See, Document 14.) Furthermore, Defendant briefed the same issue in its Rule 68 letter of March 16, 2006

---

[4] Defendant's Memorandum (Document 36) contains a total of 34 pages. If the introductory pages and facts in the Memorandum are removed from consideration by this Court, then slightly less than 20% of the Memorandum (4.25 pages ÷ 22 pages = 19.3%) were spent on the issue for which Defendant is seeking attorney's fees.

(Document 55, Exhibit B), and cited and explained both <u>Sonolux</u>, supra, and <u>Davis v. E.I. Dupont de Nemours & Co.</u>, 249 F.Supp. 329 (S.D.N.Y. 1966), two of the six cases Defendant cited in its <u>Memorandum of Law in Support of CBS Corp.'s Motion for Attorney's Fees</u> (Document 54) on this issue.

Defendant claims it took a total of 52.8 hours to write about this single issue, when both issues had been fully briefed and later discussed with Judge Collings at the mediation and fully explained in Defendant's Rule 68 letter. Under the circumstances, the number of hours spent on this issue seems excessive. However, the amount of attorney's fees they receive should be based on the work performed on the issues in which they were successful.

Moreover, this Court's decision on the issue of multiple awards of statutory damages against a single defendant filled about two and one-half pages of a thirty-two page decision (about 8% of the decision) (see Document 51). Judging from the paucity of cases cited and the relative short length of Defendant's Memorandum and this Court's decision, this issue seems to have been fairly simple to grasp (to everyone except Plaintiff).

Defendant claims that Jonathan M. Albano spent 5.1 hours (almost a full day) and Mary B. Murrane spent 47.7 hours (over a full week, even by Bingham McCutchen standards) discussing, researching, and briefing this simple issue.[5] This is over and above the unknown number of hours that Attorneys Albano and Murrane spent preparing for the mediation session and later preparing Defendant's Offer of Judgment letter of March 16, 2006 (Document 55, Exhibit B), in which Mr. Albano consumed three single-

---

[5] This corresponds to a fee request of $19,272.00, which corresponds to a 20% reduction according to the Murrane Affidavit (Document 55-2, pp. 9-12).

8

spaced pages using small point type reviewing the numerous reasons why he felt that only a single award of Statutory Damages was available for the use of the Flemmi Photograph by two separate television stations.[6] In addition, Defendant's fee request includes "a further discount of 20%" (see, Murrane Affidavit, Document 55, p. 3), which is not explained anywhere in the Motion for Attorney's Fees or supporting evidence. If the hourly rates charged by Bingham McCutchen are indeed competitive, why did Defendant feel compelled to reduce the fees by 20%? (CBS Corp.'s Motion for Attorney's Fees, Document 54, p. 6).

Defendant was required to brief Plaintiff's Motion for Partial Summary Judgment on the issue of liability in Fitzgerald I (in which Plaintiff was successful), and it chose to file a Motion for Summary Judgment on the defense of fair use (in which Defendant was unsuccessful). Thus, the number of hours that are alleged to have been spent on the single issue decided in Fitzgerald II seems excessive.

## V.   Defendant's request for fees should be reduced downward under the Lodestar method.

The Lodestar method is a formula courts employ to award reasonable attorney's fees to prevailing parties. Only prevailing parties can recover attorney's fees. (See, Michel-Ramos v. Arroyo-Santiago, ___ F.Supp.2d ___, 2007 WL 1847398 at *2 (D. Puerto Rico 2007). The court must first establish

> . . . a 'threshold point of reference' or the 'lodestar,' which is the number of hours reasonably spent by each attorney multiplied by his reasonable hourly rate. This lodestar can then be adjusted up or down to reflect a variety of factors, such as

---

[6] Most of the time, entries in Defendant's Affidavit of time and charges have been redacted. Therefore, it is impossible to determine how much time and effort went into researching and preparing the Rule 68 Offer of Judgment letter and preparing the Mediation Memorandum or preparing for the Mediation. Surely, some of the research that was used to prepare the Rule 68 letter and the Mediation Memorandum was useful in preparing Defendant's Motion for Partial Summary Judgment on the issue of double statutory damages.

> delay in payment, quality of representation, and the results obtained, if they have not already been taken into account in computing the lodestar. To determine the number of hours 'reasonably' spent, as well as in setting a 'reasonable' hourly rate, a court must review the work to see whether 'counsel substantially exceeded the bounds of reasonable effort,' and should disallow hours that were 'duplicative, unproductive, excessive, or otherwise unnecessary.' In setting the lodestar, a court is also expected to consider a variety of factors, including the 'type of work performed, who performed it, the expertise that it required, and when it was undertaken.' [citations omitted.]

Boston and Maine Corp. v. Moore, 776 F.2d 2, 6-7 (1st Cir. 1985).

In Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 295 (1st Cir. 2001), the court said that the trial judge must subtract duplicative, unproductive, or excessive hours from the lodestar amount. "[I]t is the court's prerogative (indeed, its duty) to winnow out excessive hours, time spent tilting at windmills, and the like. Id. at 296.

In the case at bar, Defendant spent 52.8 hours writing about an issue it seems to have fully researched and briefed at least twice before in this litigation; first at the March 2006 mediation, and second, in the Rule 68 letter of March 2006. Plaintiff contends that Defendant's fee request for $19,272.00 (which would have been about $24,000 had it not been inexplicably discounted by Defendant by 20%) seems to be both excessive for only four and one-quarter (4¼) pages of a memorandum but also duplicative of research and writing done only a few months earlier.

Thus, the number of hours spent and corresponding fee for the single issue decided in Defendant's favor in Fitzgerald II seems excessive.

**VI.   Defendant's Motion for Attorney's Fee was unreasonable and vexatious warranting an award of attorney's fees and costs to Plaintiff under 28 U.S.C. §1927.**

Defendant knew or should have known that its Motion for Attorney's Fees was improperly filed at this time because final judgment had not entered in Fitzgerald II. Title

10

28 U.S.C. §1927 allows for sanctions for creating excessive litigation costs and it imposes upon counsel the responsibility to act in good faith throughout all phases of legal actions. It is specifically designed to deter bad faith conduct by any attorney. Herrera v. Scully, 143 F.R.D. 545 (S.D.N.Y. 1992). Indications of bad faith permitting awards of attorney fees to opposing parties include findings that claims advanced were meritless, that counsel knew or should have known that they were without merit, and that the motive for filing suit was for an improper purpose such as harassment. Veneziano v. Long Island Pipe Fabrication & Supply Corp., 238 F.Supp.2d 683 (D.N.J. 2002), affirmed, 79 Fed. Appx. 506, 2003 WL 22416714.

Plaintiff is a self-employed photographer of modest means while Defendant is a huge, multinational, publicly traded corporation. Defendant knew or should have known that its request for attorney's fees would have a chilling effect on Plaintiff and the conduct of this litigation. Defendant's conduct is more than mere negligence, inadvertence or incompetence. The inappropriate filing of Defendant's Motion for Attorney's Fees amounts to harassment and coercion and is vexatious under 28 U.S.C. §1927. U.S. v. Dubon-Otero, 98 F.Supp.2d 187 (D. P.R. 2000) (Finding of subjective bad faith is not required in order to impose statutory sanctions for attorney misconduct; sanctions under statute are appropriate when counsel's conduct has multiplied the proceedings and, in doing so, has been unreasonable and vexatious, in the sense of being harassing or annoying.) See, also, E.E.O.C. v. Tandem Computers Inc., 158 F.R.D. 224 (D.Mass. 1994).

WHERFORE, Plaintiff requests that this Court deny Defendant's Motion for Attorney's Fees and award Plaintiff his cost and attorney's fees or grant such other relief as to this Court seems just.

CHRISTOPHER FITZGERALD,
By his attorney,

/s/ Andrew D. Epstein

July 20, 2007                             Andrew D. Epstein, Esq. (BBO #155-140)
                                          Barker, Epstein & Loscocco
                                          10 Winthrop Square
                                          Boston, MA  02110
                                          (617) 482-4900

Certificate of Service

I certify that a copy of this document was filed through the ECF system and will be sent electronically to all counsel of record.

/s Andrew D. Epstein
_____
Andrew D. Epstein